WILLIAM MASTERSON v. W. C. GOODLETT.

1. "A CRIB OF CORN" is an indefinite quantity, not merely because the capacity of the crib is not stated, but because the expression, in common usage, does not mean a crib full of corn.

2. PAROL EVIDENCE—RECEIPT.—A receipt for a crib of corn, being exhibited as evidence against the maker of it, with parol evidence of its dimensions and a calculation of its capacity, does not preclude the bailee from showing by parol the actual contents of the crib: and *Held*, Error to exclude such testimony.

3. MEASURE OF DAMAGES.—It seems that in an action upon a contract for the delivery of personal property paid for, that interest should not be computed from the time fixed in the contract for its delivery, where a higher value at a subsequent time was adopted as the measure of damages. The interest should only be computed from the date of the valuation fixed.

4. SAME.—Where a bailee took possession of "a crib of corn," at the request of the bailor, and for his benefit, the measure of damages on the bailee for using it would be the value when taken, with interest.

5. SET-OFF—PARTNERSHIP DEBTS.—In a suit by a surviving partner on an obligation for a debt belonging to the partnership, but in his own name, the defendant can set off a partnership claim held by him. By the rule that "the debts must be mutual between the parties," is meant the real, and not merely the nominal, plaintiff and defendant.

6. SAME.—This is the rule without reference to the solvency or insolvency of the members composing the firm.

7. SAME.—The authorities go further, and hold that if the demand sued on was the individual property of the survivor of a firm, the defendant would have the right to set off a partnership debt held by him against the firm.

8. CASE DISCUSSED.—This case distinguished from Hamilton *v.* Van Hook, 26 Tex., 305.

APPEAL from Brazoria.    Tried below before the Hon. A. P. McCormick.

The facts are stated in the opinion.

*A. R. Masterson,* for appellant, cited Story on Bail., 47 61, 117, 184, 228, 283; 2 Pars. on Cont., 90; Jones on Bail., 94; Browne *v.* Johnson, 29 Tex., 40; Nelson *v.* King, 25 Tex., 662; 2 Greenl. Ev., secs. 636, 644; 3 Phil. on Ev., 451; 2 Kent, 564; Hill on Torts, 100; 32 Barb., 396; 5 Bosw., 293; 8 Md., 148; 12 Grattan, 153; 19 Miss., 467; 2 Greenl., (Redfield's ed.,) secs. 276, 636, 649; Pars. on Cont., vol. 3, (5 ed.,) pages 190 to 202; Story on Bail., (5 ed.,) 545, 555; 3 Kent's Comm., 480, (6 ed.;) 10 Peck, 422; 4 Ib., 466; 15 Ib., 206, 507; 11 Gray, 111; 13 Ib., 313; 3 Bibb., 93; 3 Littell, 27; 13 La., 225; 1 Nott & McCord, 221; 24 Ind., 280; 6 Ga., 530; 25 Ib., 537; 35 Ib., 136; 41 Miss., 368; 40 Ib., 362; 21 Ib., (6 Bennett,) 264; 48 Maine, 186; 35 Ib., 203; 42 N. H., 424; 45 Ib., 545; 47 Ib., 219; 12 Ill., 99, 184; 21 Ib., 118; 36 Ib., 60; 19 Conn., 319; 26 Ib., 389; 29 Ib., 479; 12 Md., 108; 25 Ib., 269; 18 Ib., 468; 5 Harris and J., 211; 2 Nev., 112; 4 Ib., 156; 21 Mo., 279; 40 Ala., 212; 5 Harr., 256; 56 Penn., 454; 5 Watts & S., 106; 4 Minn., 90; 2 Mason, 77; 25 Tex. Supp., 276; 14 Johns., 128, 279; 3 Sandf., 614; Randon *v.* Barton, 4 Tex., 289; Calvitt *v.* McFadden, 13 Tex., 324; Brasher *v.* Davidson, 31 Tex., 190; Cartwright *v.* McCook, 33 Tex., 612; 40 Miss., 472; 3 Kan., 257; 15 La., 280; 1 Smith L. C., 381; 2 Kent, 567; Ogle *v.* Atkinson, 5 Taunt., 759; 17 Ala., 216; 2 Duer, 327; 1 Pothier on Ob., 458.

*E. M. Pease,* also for appellant.

*A. S. Lathrop & E. J. Wilson,* for appellee, cited, Self *v.* King, 28 Tex., 552; Hunt *v.* White, 24 Tex., 643; 1 Greenl.

Ev., 227, 228; Randon *v.* Barton, 4 Tex., 289; Calvit *v.* McFadden, 13 Tex., 324; Brasher *v.* Davidson, 31 Tex., 190; Cartwright *v.* McCook, 33 Tex., 662; Hamilton *v.* Van Hook, 26 Tex., 305.

*Hancock, West & North,* also for appellee.

GOULD, ASSOCIATE JUSTICE.—Goodlett sued Masterson, on his promissory note for $588, coin, dated December 1, 1865, payable to the order of Goodlett, on the first day of the following April; also on an instrument of writing of the same date, as follows: "Received of William C. Goodlett, one crib of corn, which I agree to return out of the next year's crop, and hold same subject to his order. Also, three stacks of fodder of large size, three cane carts, and one small cart, all of which I promise to return to him as soon as the crop of 1866 is taken off, in as good condition as when received. Brazoria county, Texas, December 1st, 1865. (Signed,) William Masterson."

The petition alleged the quantity and value of the corn and fodder, and that defendant had failed and refused to return them, or their value, when demanded, and in an amended petition judgment was prayed for the highest market value thereof up to the time of trial. In an amended petition, plaintiff also sought to recover on another promissory note for $150, coin, dated April 4th, 1867, and payable to the order of Goodlett, on the first of January, 1868.

Without attempting to set out the answers of defendant, it is enough to say, that they were sufficient to admit of the evidence adduced, which evidence tended to establish that in the fall of 1866 defendant replaced the corn and fodder in the crib, and on the place where they were, when received by him; that the plaintiff was out of the State, and had no agent to receive it; that he notified plaintiff, by letter, who replied requesting him to take care of the corn; that when defendant removed to another plantation, some six or seven miles

distant, which he had rented for the year 1867, there was no one on the abandoned plantation, and he therefore removed the corn also, and then used it. Further, that on the return of Goodlett, in the spring of 1867, defendant offered to return the corn he had borrowed, but that Goodlett refused to receive it, and demanded payment in money for a larger quantity of corn than was received, and at a higher price than it was then worth. On the other hand, Goodlett testified, denying any offer to return either corn or fodder. The answer of defendant also alleged, and there was testimony tending to establish the averment, that the corn and fodder, as well as the consideration of the note of December 1, 1865, were the partnership property of the estate of John A. Wharton, deceased, and of plaintiff; that said note and the instrument sued on of same date, were the property of the partnership of Wharton & Goodlett, and that defendant's liability thereon was to the partnership, and that they, were subject to be set off by the note of Wharton & Goddard, for the sum of $715, dated January 2, 1861, payable twelve months thereafter, to the executor of the estate of McNeil, and legally transferred to defendant.

The answer setting up this set-off alleged the insolvency of Wharton's estate, and the non-residence and insolvency of Goodlett. There was a verdict, and judgment for plaintiff for the sum of $2286.80, coin, and disallowing the set-off claimed.

The court allowed the plaintiff to prove the dimensions of the crib in which the corn was, and the quantity of corn which a crib of such dimensions would hold, but refused to admit evidence, offered by defendant, to show the actual quantity of corn which was in the crib, and instructed the jury that the written contract to redeliver a crib of corn, imported conclusively, and as matter of law, that the crib was full. We think that this was erroneous. The quantity of corn could not be ascertained from the face of the instrument; and where parol evidence was resorted to, the court should have allowed it to

extend to the actual quantity. A crib of corn is an indefinite quantity, not merely because the capacity of the crib is not stated, but because the expression, in common usage, does not necessarily mean a crib full of corn. Corn, or cotton in a pen, would naturally be described as a pen of corn or cotton, whether the pen were full or not. The language of the instrument should be construed, as far as may be, according to the intention of the parties; and we think that intention was to say, that the plaintiff received and would return the quantity of corn which was in a certain crib.

The court further instructed the jury to value the corn and fodder at their highest market price, at the place where delivered, from January 1, 1867, up to the time of trial, and to allow interest thereon from January 1, 1867. If the defendant never returned the corn and fodder, as he agreed to do, but was wholly in default, the rule given in charge, and recognized by the decisions of this court, in cases where the purchase-money has all been paid, would be applicable; but it would seem more than questionable whether, even in such case, interest should be allowed, except from the time at which the valuation is fixed. But under the evidence, the jury were at liberty to find that the defendant had complied with his contract, to replace the articles, as fully as he could, in the absence of the plaintiff; that in removing and using them, he was committing no wrong, but only doing what he might well have assumed the plaintiff wished him to do, as being for his best interest; and if such were the facts, it is our opinion that he only made himself liable for the value of the corn and fodder at the time when appropriated by him, with interest from that time.

The court further instructed the jury to disregard the note of Wharton & Goodlett, plead in set-off, unless they found that the plaintiff, the partnership of Wharton & Goodlett, and the estate of John A. Wharton were all insolvent. If, as alleged, and as the evidence tended to establish, the note and obligation of December 1 were the property of the part-

nership of Wharton & Goodlett, and the recovery of plaintiff thereon would have been for the benefit or use of the partnership, then the debt of the firm in the hands of defendant was a valid set-off thereto. By the rule, that the "debts must be mutual between the parties," is meant the real and not merely the nominal plaintiff and defendant. (Waterman on Set-off, secs. 197, 219, and ref.; Cowles *v.* Cowles, 9 How., (N. Y. Pr.,) 361.)

Counsel for appellee refer to the case of Hamilton *v.* Van Hook, 26 Tex., 305, where an attempt was made to offset the individual claim of the plaintiff by a debt of a firm composed of a number of persons, of whom he was one. The debts were not mutual, either on their face or in fact, and it was held that the "burthen of proof was on the defendant, to show the insolvency of all the parties who were liable on his demand so pleaded in set-off," that being the equitable ground on which he sought to have it allowed. To the extent to which the demand of plaintiff was the property of Wharton & Goodlett, although executed to Goodlett and sued on in his name, the debt of Wharton & Goodlett was a valid set-off, without reference to their solvency or insolvency. Indeed, the authorities go further, and hold that if the demand sued on was the individual property of Goodlett, who was surviving partner of the firm of Wharton & Goodlett, the defendant had the right to set off against it the partnership debt of Wharton & Goodlett. (Waterman on Set-off, secs. 135, 207, note, and citing Waln *v.* Hewes, 5 Serg. & Rawle, 467; Miller *v.* Receiver, 1 Paige, 444; Byles on Bills, [290,] 416; Bourne *v.* Wooldridge, 10 B. Monr., 492.)

If all the parties liable on the debt pleaded by defendant in set-off are insolvent, that fact, according to the case of Hamilton *v.* Van Hook, would make it inequitable to reject his set-off to Goodlett's individual claim, though Wharton were still alive, and the firm of Wharton & Goodlett still in existence. But if Goodlett be the survivor of the firm, it is unnecessary to prove such insolvency.

REVERSED AND REMANDED.