## J. M. RADFORD GROCERY CO. v. PORTER et al. (No. 3170.)

Court of Civil Appeals of Texas. Amarillo. May 1, 1929.

Rehearing Denied May 22, 1929.

146

J. B. Clark, of Shamrock, and W. E. Lessing, of Abilene, for appellant.

Hill & Engledow, of Shamrock, for appellees.

RANDOLPH, J. This suit was filed by J. M. Radford Grocery Company against J. R. Porter and W. R. Porter, under the firm name of Porters' Cash Grocery Company, upon a verified account. J. R. Porter died, and the plaintiff filed its amended petition, alleging that fact and seeking recovery on the account against W. R. Porter, as surviving member of the partnership and as trustee for the firm of Porters' Cash Grocery Company for the purpose of paying the debts of said firm.

The defendant W. R. Porter filed his second amended original answer, consisting of a general exception, general denial, and a special plea setting up that he was wrongfully charged with certain items and that he had not been properly credited with certain payments which he claimed to have made.

The case was tried before a jury, and, at the close of the evidence, the court instructed the jury to return a verdict that plaintiff take nothing by its suit and in favor of the defendant W. R. Porter against the plaintiff for the sum of $231.20. Judgment was rendered accordingly, and plaintiff has appealed.

The appellant's appeal is based upon the errors alleged to have been committed on the trial of the case, in part covered by a number of propositions stated by us as follows: (1) The burden was on the defendant to prove the alleged payments, offsets, and credits, and, when he failed to prove same, by legal and competent evidence, the plaintiff was entitled to an instructed verdict; (2) that the checks offered by the defendant to show payment to plaintiff are not evidence of that fact unless it be shown by some evidence that such checks were drawn by some one on behalf of the defendant or by the defendant himself and were delivered to the defendant as a payment on such account and that the proceeds had been received by the plaintiff; (3) an answer by the defendant in a suit on a verified account, which merely sets out that such account is incorrect in certain named particulars, and that thereby the account should be credited with an amount greater than the balance shown to be due, is not a denial of the justness and trueness of the account within the provisions of article 3736, Revised Civil Statutes; (4) where the only evidence offered by the defendant, on his affirmative plea of payment, is two checks not in any manner shown to have been drawn by the defendant or delivered to the plaintiff or indorsed by plaintiff, or that the plaintiff received the proceeds thereof, the testimony of a witness that the ledger account of plaintiff and defendant, copied by plaintiff, pertinent to transactions other and different from the one sued on, does not authorize a verdict for the defendant for such payments, and such verdict is not supported by the evidence.

The plaintiff is engaged in the wholesale grocery business, and the defendant and his deceased partner were engaged in the retail grocery business. The suit was brought to recover a balance alleged to be due from the surviving defendant, Porter, upon a running account during the years 1924 and 1925.

The defendant specifically denied the correctness of the following items, shown in the verified account: One case No. 220 Lipp. stuffed olives, containing 2 dozen bottles at $6.75 per dozen, $13.50; one case No. 217 Lipp. stuffed olives, containing 2 dozen bottles at $6.75 per dozen, $13.50. That each case only contained one dozen bottles instead of the two dozen charged on the account, and that the defendant is entitled to a credit of $13.50 on said account.

Defendant also alleged, as follows:

"Further answering herein, this defendant says that said verified account is incorrect in the following particulars, to wit: Said account contains the following charges: March 31, 1924, interest, $3.95; July 31, 1924, interest, $9.93; August 30, 1924, interest, $17.19; September 30, 1924, interest $23.80; October 31, 1924, interest, $17.68; November 29, 1924, interest, $23.15; December 31, 1924, interest, $18.62; June 30, 1925, interest, $5.45; July 31, 1925, interest, $5.73; August 31, 1925, interest, $5.99; September 31, 1925, interest, $5.85; October 31, 1925, interest, $5.85.

"The aggregate amount charged as interest on said account as above specified is the sum of $143.19, and defendant says that said charges were unauthorized and wholly incorrect, and that by reason of said charges said account should be credited with said sum of $143.19.

"Defendant further shows to the court

that said verified account is incorrect in the following particulars: Said verified account shows that on April 29, 1924, defendant was charged with 25 sacks of sugar, $332.50; on June 10, 1924, plaintiff sent to defendant a corrected invoice, the amount stated therein $325. Said corrected invoice stated that defendant's account had been credited with the difference of $7.50, but said credit does not appear on said verified account. Defendant says that said sum of $7.50 should be deducted from said account.

"Further answering, defendant further shows that said verified account is incorrect in the following particulars, to wit: On March 17, 1924, plaintiff sent to defendant a credit memorandum for the sum of $15, for pickles returned. The verified account shows no credit for this credit memorandum, and said sum should be deducted from said account.

"Further answering herein, defendant shows to the court that on April 1, 1924, he gave to defendant in payment on account a check on the First National Bank of Shamrock, Tex., for the sum of $366.80; that said check was paid by said bank to plaintiff on April 10, 1924; that defendant is not credited with said payment—is not credited on said verified account; that said sum of $366.-80 should be deducted from the amount of said account.

"Further answering herein, defendant respectfully shows to the court that on April 8, 1924, he gave to plaintiff his check drawn on the First National Bank of Shamrock, Tex., for the sum of $404.55; that said check was paid by said bank to plaintiff's order on the 17th day of April, 1924; that said payment was not credited on said account; and defendant is entitled to have said sum of $404.55 deducted from the amount claimed in said account.

"Further answering herein, defendant shows to the court that on June 30, 1924, plaintiff was charged on said verified account with $7.11 as interest; that said charge was unauthorized and is incorrect, and said account should have deducted therefrom said sum of $7.11.

"Further answering herein, and by way of cross-action, defendant respectfully shows to the court that he has paid to plaintiff the sum of $243.70 more than he owed on said account, all of which he is ready to verify."

This pleading was verified by the following affidavit:

"State of Texas, County of Wheeler.

"Before me, the undersigned authority, on this day personally appeared W. R. Porter, defendant in the above styled and numbered cause, who after being by me first duly sworn, says that he has read the foregoing answer and that the facts stated therein are true."

This affidavit was dated September 3, 1928, and was subscribed by W. R. Porter and sworn to by him before the clerk of the district court of Wheeler county, Tex.

Article 3736, Revised Civil Statutes, provides as follows: "When any action or defense is founded upon an open account, supported by the affidavit of the party, his agent or attorney, taken before some officer authorized to administer oaths, to the effect that such account is, within the knowledge of affiant, just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed, the same shall be taken as prima facie evidence thereof, unless the party resisting such claim shall, before an announcement of ready for trial in said cause, file a written denial, under oath, stating that such account is not just or true, in whole or in part, and if in part only, stating the items and particulars which are unjust; provided, that when such counter affidavit shall be filed on the day of the trial, the party claiming under such verified account shall have the right to continue such cause until the next term of court; when he fails to file such affidavit, he shall not be permitted to deny the account, or any item therein as the case may be."

■ The account herein sued on and verified is clearly within the terms of article 3736, above quoted. Therefore, if the defendant desired to attack the account as a whole or in part he must have filed his written denial, under oath, as being unjust, and if it is claimed that the account is unjust in part, setting out with "particularity the items alleged to be unjust"; but this statute does not apply to pleas of payment or of counterclaim on or against the account. American Druggist's Syndicate v. Holt Drug Co. (Tex. Civ. App.) 272 S. W. 508; Moore v. Powers, 16 Tex. Civ. App. 436, 41 S. W. 707; Queen City Motor Co. v. Texas Auto Supply Co. (Tex. Civ. App.) 241 S. W. 212–214.

■■ The pleadings of the defendant set out particularly the claims of the defendant, and, as to the plea of uncredited payments, proof was admissible to sustain the allegations of the pleadings. It is true that the defendant alleges certain additional items as being incorrect, in that he was charged with four dozen bottles of olives when he only received two dozen bottles, and as to this item, if a proper objection had been alleged against it, it probably would have been held good; but the objection was against the pleading as a whole. The pleading being good as to the pleas of payment, and the objection being against the whole of it, we overrule the assignments and propositions relating to the failure of the defendant to affix the statutory affidavit to such pleading. The verified account introduced in evidence by the plaintiff shows a total charge amounting to $13,032.86, which is credited with various sums amounting to $12,318.91, leaving a

balance claimed to be due the plaintiff in the sum of $713.95.

Ernest Old, supervising bookkeeper for the plaintiff, testified that the account stood at the sum of $1,453.48 and had received credits of $404.55, $366.80, $7.50, and $15, which credits claimed by him amount to $793.85. The sum of these credits testified to by Old, taken from the amount of the account, $1,453.48, leaves a balance of $659.63, instead of $713.95, shown by the verified account in evidence.

It is insisted by the appellant that the trial court erred in excluding certain ledger sheets which the witness Old testified as containing the account and showing the credit of the items of credit which the defendant claims he had not been credited with. The said sheets were offered to show that the amounts had been credited upon a prior portion of the account.

■ To authorize books of account in evidence, it must be proved: (1) That the book or books contain original entries of transactions pertinent to the business in question; (2) it must appear that the entries were made in the usual course of business at or near to the time the transactions were had; (3) that the entries must be such as to indicate what the charge is for, i. e., what the transaction was; (4) that the entries were made by some one authorized to do so, and that he did the act so recorded himself, or that he made the record upon information derived from one who was authorized to do so; (5) that the transactions were regularly entered and that the books were correctly kept. Stark v. Burkitt, 103 Tex. 437, 129 S. W. 343; Warren v. North American Car Co. (Tex. Civ. App.) 294 S. W. 301.

As stated, the ledger sheets were offered to show that the items of credit claimed by the defendant had been credited on a prior portion of the account. The supervising bookkeeper of the plaintiff during the years 1924 and 1925, when the account was made, testified that he did not at that time do any of the actual posting of the invoices, but that all charges and credits to the customers would come through him and be posted under his directions; that the account was a sheet taken from the ledger and is the account of the Porter Cash Grocery Company. He does not know where the person is who actually made these entries; he is not in the employ of the plaintiff at the time of the trial. He does know that these entries were actually kept and were made on the dates of the transactions therein shown. The account begins on April 14, 1922, it was opened by the Porter Cash Grocery Company on that date. The plaintiff ends its business year on January 31st. At the end of the business year, the plaintiff sends its customers a statement of their account, and this was done in this case.

The supervising bookkeeper further testified:

"A young man in our employ at that time who operated the machine actually made those entries, and I do not know where that young man is at this time. I do not know whether he is in this state, or not. I have not made any effort to locate the man who actually made those entries. That man only made such entries as I directed him to make and I checked the books to see that those entries were made as I had directed. I prepare the work for this young man and he puts it on the books with the aid of a listing machine. This instrument I have here is copied from the original entry; the data for the original entry. This instrument is the original ledger sheet and is the first permanent record that we have that was made in regard to these sales.

"The invoices are what we mail the customers; we make an entry for the books and our invoices for the customers. As these goods are sold we have them charged on these books as the original charge to the defendant. There is no other place in the record where they have been charged to the defendant. And I check them over to see that these correspond with the invoices that are sent to the customers. That ledger is posted from the amount of the customer's invoices and we keep a copy of the invoice; make it in duplicate and the customer gets the original invoice and we keep the duplicate and I make this instrument from that duplicate that we keep. We keep these invoices that are permanent records in the office for about two years and then they are destroyed.

"The original invoices in this particular account have been destroyed prior to February 29, 1924. And this is now the only record we have of the account prior to 1924, against Porter other than our itemized statements. We do not have a record of that account prior to the 29th of February, 1924; we do not keep those invoices, the original of which were mailed to the customer. I think we are using a system of bookkeeping that's in vogue; it is impossible to keep a ledger showing every item that a customer purchases; if we attempted to do that we would have to have twenty-five bookkeepers instead of five.

"In order for me to state the amount that was owed by Mr. Porter of the Porter Cash Grocery on February 29th, 1924, it would be necessary for me to refer to the ledger sheets. We did send an account to Mr. Porter on February 19th, 1924, stating the balance of his account. I don't know whether it was accepted by Mr Porter, or not; that document may be on file at Abilene. * * * The balance of this Porter account on February 29th, 1924, was $1,453.48. That was the amount that Porter owed at that time as shown here. This ledger sheet shows the

account of Mr. Porter subsequent to February 29th, 1924.

"I am getting my answers from this sheet here. This account shows a credit of $366.80; this credit was posted on this sheet from a cash sheet for that particular purchase. The cash sheet was the book of original entry; the cash sheet is filed as the original record; we have that in our office. That remittance of $366.80 was applied against Mr. Porter's balance of $1,453.48. About May 17th we received a remittance of $404.55—that was received on April 17th, rather —and that remittance was applied against this balance of $1,453.48.

"On April 29th, 1924, we issued a credit memorandum to Mr. Porter of $7.50, and that credit was applied against the balance of $1,453.48. On March 17th, 1924, we issued a credit memorandum to Mr. Porter for $15.00, being for pickles returned and that credit was applied against this $1,453.48. The balance of this $1,453.48 was paid by various checks and allowances and discounts. To my knowledge Mr. Porter never at any time questioned the application of those payments.

"This is all the record I have now pertaining to the Porter account prior to February 28th, 1924. These entries were made under my directions and represent the amounts of the purchases on those specific dates. I might add that this is our permanent record and I know it is correctly kept. I can't testify as to what this first charge here of $29.60 on April 14th, 1922, represented or covered. As to what some of those entries covered I will state that some of the items are written there. Most of them, however, merely show the amount of the sales that was made on that particular day. We closed this account on the 29th. There are enough credits right down here to cover that balance.

"We did not itemize the entire account from the date it began showing all credits and all payments for the reason that it would take more time; we did it this way to save time and labor of getting the other up and we considered the account was paid up to that time. My testimony is that the account was paid up to this $1,453.00. We received that $404.00 check on April 12th. The charges just before that, they included items sold during the month preceding that and we went right straight along through. And they were paid in April and we credited it right here just like the account was running right straight along. And we simply pick up a number of credits along here and apply it to what we say this book shows was due on February 1st, 1924. The credit was applied when it was received covering invoices prior to February 29th. These amounts covered specific invoices but I don't know what they were; don't know whether that was the correct amount for that particular invoice, or not; might have covered several invoices for that amount.

"These sheets cover the entire period from the opening of the account of the Porter Cash Grocery Company down to the first item included in my statement filed here. And these payments that I say were made to us in April, $366.00 and $404.00, and these various credit memorandums that the defendant pleads here, they were some time subsequent to the starting of this account that we filed. We simply take those items and go back into the account above that and after taking credit for those we come down and start the account as a new account from that date, the date those credits would balance even though they were paid after some of the items charged under the statement were made. These pages don't purport to show the items of merchandise purchased by Mr. Porter of the Porter Cash Grocery Store from the plaintiff. It simply contains figures that I understand the meaning of."

The trial court qualified the bill of exceptions to his refusal to admit the ledger sheets in evidence, as follows: "The sheets offered in evidence as pages of the general ledger were in the exact form as the sheets attached to said bill of exception No. 3, and marked 'Exhibit A,' The defendant objected to the introduction of said sheets in evidence on the ground that they only consisted of columns of figures under the headings: 'Date,' 'Charges,' 'Date,' 'Credits,' 'Balance'; that said sheets were unintelligible to the jury; that if the figures shown under the heading 'Charges' were debits for items of merchandise, that the particular items of such merchandise were not shown on said sheets, and because the original sales tickets or orders from which the entries were made were not definitely shown to have been destroyed."

The two checks offered in evidence by the defendant to sustain his claim of credit, to wit, checks for $366.80 and $404.55, that were payable to the J. M. Radford Grocery Company, or order, were signed by the Porter Cash Grocery Company and bore the indorsement: "Pay to the Order of Amarillo National Bank, Amarillo, Texas, J. M. Radford Grocery Company, Abilene Account," and bore dates, respectively, April 1, 1924, and April 8, 1924. They came from the possession of the defendant and were offered in evidence by him. It will be seen that the plaintiff, in the testimony of its bookkeeper, admitted the receipt of checks in the amount of these two checks, but claimed that they were credited upon a former account. The verified account in evidence begins its items on March 6, 1924, and ended them October 31, 1925, aggregating a total charge of $13,032.86. The credits listed thereon begin March 5, 1924, and end November 27, 1925. These checks bear date after the rendition of this account, or at least after the first charges thereon were made, and there is nothing in the record which shows that they were to be

credited upon any other than the account then running.

Finding no reversible error, we overrule all assignments of error, and affirm the judgment of the trial court.