THOMPSON et al. v. PRINCE.

No. 2033.

Court of Civil Appeals of Texas. Waco.

March 2, 1939.

Rehearing Denied March 30, 1939.

Renfro & Kilgore, of Dallas, and D. T. Bowles, of Breckenridge, for plaintiffs in error.

Logan Ford, of Dallas, for defendant in error.

ALEXANDER, Justice.

W. D. Prince, as receiver of Lloyds of Texas, an insurance exchange organized on the Lloyd's plan under Chapter 19, Title 78, of the Revised Civil Statutes of Texas, Vernon's Ann.Civ.St. art. 5013 et seq., filed this suit against Eugene Thompson and Claude Thompson, two of the underwriters of the exchange, to recover their share of the unpaid liabilities for losses incurred by the exchange and the expenses of receivership. A trial before the court resulted in judgment for plaintiff. The defendants appealed.

The record discloses that defendants had jointly subscribed for $10,000 of the capital stock of Lloyds of Texas, paying thereon $1,500 in cash, delivering securities for 25% of their subscription, and giving their personal note for the balance of $6,000. The articles of association subscribed to by the defendants provided, in part, as follows: "In every policy issued under the arrangement herein contemplated, all of the parties hereto, being the subscribers, shall become insurers and every subscriber shall be and become severally liable under each and every policy so issued in the proportion which his subscription to surplus at the time of the issuance of such policy shall bear to the total subscription to surplus of all subscribers at that time." (Said articles also provided that "no subscriber shall be liable for the payment of losses beyond the total of the amount he may have to his credit at any one time, plus his total unpaid subscription to surplus," but it is not contended that the judgment herein subjects the defendants to liabilities in excess of that permitted by this provision.) Said exchange became insolvent and W. D. Prince was appointed receiver thereof. After the appointment of the receiver, the court appointed a Master in Chancery to ascertain the extent of the liabilities of the exchange for losses that were then unpaid and the proportionate share of each subscriber's liability therefor. The Master's report was filed and approved without objection. This report showed unpaid losses amounting to $77,811.56. These liabilities consisted of unpaid claims for fire losses under policies issued by the exchange and obligations to policy holders for unearned premiums on policies canceled when the exchange became insolvent. According to this report, defendants, as subscribers of $10,000 of the stock of the exchange, were liable for said losses to the extent of $2,442. Other testimony showed that the defendants' proportionate share of expenses of administration would amount to $800. This would make the total liability of the defendants amount to $3,242. The judgment of the court was for $2,597.31.

The plaintiff introduced in evidence the report of the Master in Chancery, which, as above stated, showed that the

defendants' share of unpaid losses owing to policy holders amounted to $2,442. This report did not purport to include nor to take into account any deposits or contributions made to the exchange by the subscribers nor the earnings of the exchange prior to receivership. The receiver, over the objection of the defendants, was permitted to testify that he had examined the books of the exchange and that, after taking into account the contributions made by the defendants, the earnings of the exchange prior to receivership and the losses previously paid, he found that the defendants were entitled to a credit on the books of the exchange in the sum of $644.-69, and that when this data was taken into consideration in connection with the report of the Master in Chancery, the defendants' share of the total outstanding liabilities amounted to $1,797.31. The defendants assert that the trial court erred in permitting the receiver to thus testify as to the contents of the books without first requiring that the books be introduced in evidence and their correctness properly vouched for. We are of the opinion that the testimony complained of was inadmissible. 17 Tex.Jur. 506–509; Devlin v. Heid Bros., Inc., Tex.Civ.App., 21 S.W.2d 746; Radford Grocery Co. v. Porter, Tex.Civ.App., 17 S.W.2d 145; Randle v. Barden, Tex.Civ.App., 164 S.W. 1063. However, we do not think the defendants have suffered any injury by reason of the improper admission of this testimony. The report of the Master in Chancery was sufficient to establish the extent of the defendants' liability. The oral testimony of the receiver concerning the contents of the books had the effect of reducing the judgment against the defendants instead of increasing it and hence no injury resulted from the introduction thereof. Since no injury resulted to the defendants from the introduction of the evidence complained of, no reversible error is presented. 3 Tex.Jur. 1026–1271; Graham v. Kesseler, Tex.Civ.App., 192 S.W. 299; Southern Kansas R. Co. v. Hughey, Tex.Civ.App., 182 S.W. 361.

■ ■ The defendants were not entitled to offset the claim asserted by the receiver by the item of $644.69, nor by any other amount, owing to them by the exchange. It was shown without dispute that there were no assets on hand at the time the receiver was appointed. The receiver was seeking to recover funds with which to pay policy holders for liabilities due them under policies issued by the exchange. To that extent he represented the policy holders. Under the articles of association and the statutes regulating the exchange, each subscriber was severally liable to each policy holder for his proportionate share of the loss, and suits for such losses could have been maintained by the policy holders directly against the individual subscribers. R.S. arts. 5018b and 5021 as amended Acts 1929, 41st Leg., 1st C.S. p. 32, chap. 11, § 1, Vernon's Ann.Civ.St. arts. 5018b, 5021; Merchants' & Manufacturers' Lloyd's Ins. Exchange v. Southern Trading Co. of Texas, Tex. Com.App., 229 S.W. 312, 316; Gaunt v. Lloyds America of San Antonio, D.C., 11 F.Supp. 787, 790. On the other hand, the item of $644.69 due the defendants, as shown by the books of the exchange, was owing by the exchange. In order to authorize the offset of one claim against another, the demands must be mutual— that is, they must be between the same parties and must be due in the same capacity or right. 38 Tex.Jur. 349. In an appropriate proceeding the defendants might be entitled to an accounting and to contribution from the other subscribers to the exchange, but they were not entitled to offset the claim of the policy holders as asserted by the receiver with their claim for contribution against the other subscribers. Cooley's Briefs on Insurance, 2d Ed., Vol. 2, p. 1611; Crouch's Cyclopedia of Insurance Law, Vol. 8, p. 7008; 33 C.J. 67; 14 R.C.L. p. 855; Cocke v. Wright, Tex.Com.App., 39 S.W.2d 590.

■ Since receivership proceedings were necessary to enforce the liabilities of the subscribers in favor of the policy holders, we see no reason why the receivership expenses should not be borne by the subscribers in proportion to their liability to the policy holders. There was therefore no error on the part of the trial court in assessing against the defendants the additional sum of $800; that, according to the testimony, being their proportionate share of the estimated cost of receivership.

■ ■ At the time the defendants became subscribers to the exchange for stock in the sum of $10,000, as above set out,

they delivered to the attorney in fact for the exchange the sum of $1,500 in cash, life insurance policies on their own lives, which had cash surrender values in excess of $2,500 and executed their non-negotiable note for the balance of $6,000. The defendants alleged that after the receiver had been appointed, they appealed to him to surrender the policies to the insurance company and take the cash surrender thereof and hold same pending the outcome of this litigation, but that the receiver failed to do so; that since that time the insurance company issuing the policies had become insolvent, and, as a result thereof, they have been damaged to the extent of the value of the policies. By way of cross-action they sought to recover such damages. The trial court denied their claim, and this ruling is assigned as error. The defendants' request to the receiver to liquidate the policies was made not later than the year 1932. The insurance company that had issued the life insurance policies in question became insolvent and went out of business some time prior to September 7, 1933. Any action that the defendants may have had for damages against the receiver arose on or before the last named date. The defendants' cross-action for such damages was not filed until October 5, 1936. The cross-action therefore was barred by the two year statute of limitation. Furthermore, the record shows that in May 1934, the receiver filed suit against defendants for the title and possession of said insurance policies, claiming that the exchange was the owner thereof, and alleged that at the time the subscription contract was entered into, said securities were "accepted as 25% of the subscription of said defendant, same being in the sum of $2500.00," and in April 1935, said receiver recovered judgment against defendants, decreeing the exchange to be the outright owner of said policies. Presumably, this judgment was based on the provisions of the original subscription agreement. Said judgment does not appear to have been appealed from nor otherwise set aside. Consequently, regardless of whether or not the terms of the subscription contract were sufficient to confer absolute ownership of said securities on the exchange or whether said securities were merely pledged as collateral, it now appears to have been definitely and finally adjudicated by the parties to the suit that the exchange became the owner of the policies in question at the time the subscription agreement was entered into. It would appear therefore that the defendants would have no action for damages resulting from the failure of the receiver to liquidate the policies since said policies belonged to the exchange and not to the defendants.

The judgment of the trial court is affirmed.