

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
~~WILKINSON~~
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-6195

Re: Whether or not a claim for refund of the tax on motor fuel exported or lost by fire or other accident is subject to a six months limitation period for filing; whether such six months limitation period in fire or other accident losses runs from the time of the delivery of the motor fuel or from the date of the accident; and whether the Comptroller would be authorized to deduct from a current claim filed by an exporter, the amount of a former claim filed after said six months period and paid in error.

In your letters of the 7th and 26th of September, 1944, you submit in substance the following questions:

1. Is a claim for a refund of the tax on motor fuel exported or lost by fire or other accident subject to the six months limitation period for filing?

2. If the answer is yes, does the six months limitation period on fire or other accident losses run from the time of the delivery of the motor fuel or from the date of the accident.

3. If the six months limitation period applies in export cases, would the Comptroller's Department be authorized to deduct from a current claim filed by an exporter the amount of a former claim filed after said six months period and paid in error by said Department?

The motor fuel tax law is quite lengthy. Shorn of the verbiage unnecessary to a solution of the problems here involved, Section 13 of said Act (Art. 7065b, Vernon's Annotated Civil Statutes), being the section dealing with refunds, provides as follows:

"(a)   Any person who purchases motor fuel in the State of Texas, and any distributor who appropriates motor fuel for use . . . for any purpose other than use in a motor vehicle operated or intended to be operated in whole or in part upon any of the public highways, roads, or streets of the State of Texas, on which motor fuel tax has been paid, . . . shall be refunded the amount of such taxes . . . . . .

"(b)   . . . No refund of the tax shall be granted on any motor fuel to any person . . . unless such motor fuel has been purchased from or used by a licensed refund dealer . . .; and the Comptroller is hereby prohibited from issuing . . . . refund of the tax on any motor fuel not purchased from a licensed refund dealer except refund on motor fuel exported, lost by accident or purchased by the United States Government.

"(c)   An invoice of exemption shall be demanded by the purchaser or recipient of motor fuel used for refund purposes, and upon each delivery by a refund dealer, or upon each appropriation for use of motor fuel . . ., an invoice of exemption shall be issued . . . . . . .

"(d)   When a claimant purchases or acquires for use motor fuel upon which a refund of the tax may be due, he shall within six months from the date of delivery of the motor fuel . . ., and not thereafter, file with the Comptroller an affidavit. . . . . .

"No refund shall be made where motor fuel is used later than six months from date of delivery or appropriation, and no refund shall ever be made where it appears from the invoice, or from the affidavits, or other evidence submitted, that the sale or delivery was made more than six (6) months prior to the date of filing of the application for refund.

". . . If any person shall export or lose by fire or other accident any motor fuel in quantities of one hundred (100) gallons or more, . . . or shall sell motor fuel . . . to the United States Government, for the exclusive use of said Government, claim for refund of the tax so paid <u>may be made in the manner herein provided, or as the Comptroller may direct.</u>

. . . Provided, further, that a bonded and licensed distributor may, in lieu of filing claim for refund of the tax paid on motor fuel thereafter exported or sold to the United States Government for the exclusive use of said Government, take credit on any monthly report and tax payment made to the Comptroller within six (6) months of the date of said sale or exportation, for the amount of tax so paid."

The Motor Fuel Tax Law contains an elaborate record and reporting system designed to prevent tax evasion. Every person engaged in the production, manufacture, refining, transportation or sale of motor fuel in Texas is required to keep records as to motor fuel handled by them and to make reports to the Comptroller concerning its possession and disposition, the purpose of these requirements being to give the Comptroller information as to every gallon of motor fuel produced in or imported into the State of Texas. This elaborate record system greatly assists the Comptroller in collecting the tax, checking refund claims and preventing tax evasion and fraud.

Obviously, the passage of time makes the checking of the motor fuel on a given date more difficult. Consequently, the Legislature saw fit in the above statutory provisions to fix the six months period of limitation, within which certain refund claims must be filed.

The answer to the first question turns upon a proper construction of the statutory provision that claim for refund in cases of export, accidental loss, or sales to the United States Government "may be made in the manner herein provided, or as the Comptroller may direct." Section 23 of the Act in question gives the Comptroller power to promulgate rules and regulations for the enforcement of the Motor Fuel Tax Law. We are advised that no rule or regulation has been promulgated by your department fixing a time limit within which a claim based on exports or accidental losses may be filed, if, indeed, you could lawfully fix other than a six months limitation period. Suffice it to say that you have not done so, and we do not pass upon your authority to do so, same not being necessary in reaching a decision in this opinion.

Refund claims on exports and accidental losses, then, are to "be made in the manner herein provided." We think this language shows a legislative intent that the balance of the Act be looked to as a pattern for filing requirements for such claims. We think the words "in the manner herein provided" imply a six months limitation period. Section 13 (d) of the Act, wherein these words appear, is replete with the idea of a six months limitation period, the words "six (6) months" appearing in said

Section no less than five times.  Our conclusion in the matter is further strengthened in that the Act provides (fourth paragraph of Section 13 d) that bonded and licensed distributors, on motor fuel exported or sold to the United States Government, may, in lieu of filing refund claims, take credit on their monthly report and tax payment "within six (6) months of the date of said sale or exportation . . ." for the tax paid.  It appears unreasonable to assume that the Legislature intended to impose a six months limitation period during which a distributor could collect a refund by listing it on his report as an offset against taxes he owed the State, and yet have no such limitation on his direct application for such refund.  We conclude, therefore, that the Legislature in its use of the words "in the manner herein provided" intended that the refund claims therein referred to should be subject to a six months limitation period for filing.

The second question deals with the method of application of this rule in cases of motor fuel loss by fire or other accident.  Again we must be guided by the pattern revealed in the remainder of the Act.

A close analysis of Section 13 of the Act reveals that motor fuel tax refunds are authorized in five general situations as follows:

(1)  Sale by a licensed refund dealer to a purchaser for a non-highway use.

(2)  Appropriation for non-highway use by a distributor licensed as a "refund dealer."

(3)  Exports.

(4)  Sale to the United States Government for its exclusive use.

(5)  Loss by fire or other accident.

In the first two cases mentioned, Section 13(c) of the Act requires that the refund dealer issue an invoice of exemption at the time of delivery or at the time of appropriation, respectively.  As we construe the Statute, the six months period in the first situation, supra, begins to run at the time of delivery of the motor fuel to the purchaser; and in the second, the period begins with the appropriation, at which time the claimant "acquires for use" the motor fuel in question, receiving, at the time he appropriates it, at least a constructive "delivery."

In the third and fourth situations, supra, the fourth paragraph of Section 13(d) provides that a bonded and licensed distributor may obtain a refund on motor fuel exported or sold to the Government by crediting same as an offset on his monthly report and tax payment "within six (6) months of the date of said sale or exportation." We have no difficulty in holding that an affirmative claim for refund on motor fuel exported or sold to the Government must be filed within the same time limit as the credit on the monthly report above referred to.

In reviewing the picture as thus far made, we find that in each of the four situations, the claimant has a full six months between the time he knows he will have a claim and the deadline for filing. A person whose only basis for refund is loss of motor fuel by accident obtains his first knowledge of the existence of a situation in which the law allows a refund, at the time of the loss. He is not in a position to exercise any diligence with reference to the filing of a claim prior to that time. Accordingly, in keeping with the pattern set by the Statute in other refund situations, it is our opinion that a claimant has six months from the date of the accidental loss in which to file his claim rather than from the date of delivery. It is immaterial under the statute as to when an exporter or a seller to the Government first acquired the motor fuel. We think it likewise follows that the date of purchase or acquisition by one who suffers loss by accident is immaterial. A contrary holding would discriminate against the victims of adversity, and the statute reflects no such legislative intent.

Question number three presents a fact situation wherein a claim for refund, filed by an exporter after the six months period, has been paid. Our Opinion No. 0-2765 discussed the payment of a refund claim which failed to meet statutory requirements and concluded that "as the claimant has caused a warrant to issue and be paid upon such claim, void by reason of his own acts and omissions, he becomes indebted to the State of Texas for moneys improperly had and received from the Treasury of the State, in the amount of such warrant . . ." We think the same rule applies here and that said claimant becomes indebted to the State for the amount of such warrant. Further, it is our opinion that in paying a current refund claim filed by said exporter, your department may lawfully deduct the amount of this debt due the State, and issue warrant for the difference.

In so holding we are not unmindful of Article 4350, Revised Statutes, which reads:

"No warrant shall be issued to any person indebted to the State, or to his agent, or assignee, until such debt is paid."

The right of the State to offset a debt due it from a payment by the State to the debtor, even after warrant for the full amount had issued, was upheld in the case of Citizens' State Bank v. American Surety Co., 65 S.W. (2d) 778, error refused. In that case, a sheriff filed claim with the State for fees and received a deficiency warrant which he endorsed to the bank. The Comptroller refused to allow the warrant to be paid when it matured because the sheriff had collected certain fees from the State which were unlawful, and the Comptroller "offset and deducted therefrom the amount of unlawful items. . . ." The bank sued the sheriff and his surety. The Court held that the surety was not liable. The Court said:

"The obligation of appellee, as surety, on the bond to pay the State the unlawful fees collected, ceased when the State collected such fees, which it was authorized to do, by deducting the amount thereof from the deficiency certificate theretofore issued to the sheriff."

Judge Speer, in the case of Shannon v. Hatcher, 299 S.W. 227 (Comm. App.) states the purpose of Article 4350 as follows: "The Statute was evidently passed in order that a person might not receive money from the State when indebted to the State, and then, if said persons were insolvent, prevent the State from recovering the amount due it." It is obvious that a withholding of the amount of the debt to the State such is contemplated in this case affords ample protection to the State and satisfies the intent of the Statute.

Judge Alexander in the case of Thompson v. Prince, 126 S.W. (2d) 574, error refused, states: "In order to authorize the offset of one claim against another, the demands must be mutual . . . that is, they must be between the same parties and must be due in the same capacity or right." We think the offset here involved complies with these requirements, and with the further requirement that the demands in question be liquidated demands. Other authorities supporting our holding include: Rule 97, Texas Rules of Civil Procedure; 57 C.J. 454; Wood v. N.Y., 73 N.Y. 556; Price v. Lancaster Co., 24 Pa. Co. 225; 24 R.C.L. 813; Johnson v. City of Aberdeen, 266 Pac. 707 (Wash.).

In order to avoid misunderstanding, we think it appropriate to mention that the rule here enunciated does not work both ways. A tax payer, on grounds of public policy, is not permitted to offset a refund due him by the State against his liability for taxes owed to the State, in the absence of statutory authority. State v. Humble Oil & Rfg. Co. 169 S.W. (2d) 707 (Sup. Ct.). The Act only gives such statutory authority to a limited group, to-wit, bonded and licensed distributors on

claims based upon exports or sales to the United States Government. See fourth paragraph of Section 13(d).

We trust this satisfactorily answers your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By   s/J. Arthur Sandlin
         J. Arthur Sandlin
         Assistant

JAS:fo:wc

APPROVED OCT 9, 1944
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman