BROOK MAYS ORGAN COMPANY, INC., Brook Mays Piano Company of Pasadena, Inc., Brook Mays Piano Company, a partnership, Southwest Building Company, a partnership, Green Tree Realty & Finance Corporation and Melvin A. Sondock, Appellants,

v.

Eleanor SONDOCK, Individually and as Administratrix with Will Annexed of the Estate of Filmore M. Sondock, Deceased, Appellee.

No. 7929.

Court of Civil Appeals of Texas.

May 5, 1977.

Rehearing Denied May 26, 1977.

Taylor Moore, William H. White, W. James Kronzer, Houston, R. H. Brin, Jr., Dallas, for appellants.

Walter P. Zivley, Charles H. Waters, Jr., Houston, for appellee.

DIES, Chief Justice.

Brook Mays Organ Company, Inc., together with four other corporations and partnerships, filed suit in probate court for a declaratory judgment as to the interpretation to be given certain buy-sell agreements executed by the shareholders and partners of the above five entities. When these agreements were executed, there were four shareholder partners who shared common ownership in these entities; but, at the time suit was filed, two of these had withdrawn and sold their interests therein. Filmore M. Sondock, one of the two remaining owners, died on August 14, 1974, and the proper application of the buy-sell agreements as to his interest in these businesses is the primary issue made the basis of this lawsuit.

Under plaintiffs' original petition, the former shareholder partners or their representatives; the estate of the decedent Filmore M. Sondock; and the widow of Filmore M. Sondock were all named as party defendants. At trial, however, all parties defendants other than Eleanor Sondock, individually, and as administratrix with the will annexed of the estate of Filmore M. Sondock, had been severed out of this lawsuit or dismissed.

Trial was to a jury, and both plaintiffs and defendants obtained some favorable jury findings. Judgment was entered on the verdict that plaintiffs execute a number of promissory notes payable to Eleanor Sondock, individually, and as administratrix, totaling $544,795, each note to be payable in semi-annual installments over a ten-year period. All parties have appealed.

Under the terms of the buy-sell agreements here involved, it is clear that, in the event of the death of a shareholder partner, the agreements obligate the remaining partners and corporations to purchase from the estate of the decedent all of the interest in the partnership or shares of stock held by the decedent as of the date of his death. With respect to the partnerships involved, the agreements typically provide that the value of the portion of the partnership attributable to the deceased partner is "book value". A representative definition of the term "book value" which is contained in the agreements provides:

"The term 'Book Value' is defined as the capital account of the decedent determined as of the date of death, increased or decreased by the portion of any deficit or impairment of capital attributable thereto, as shown in the last preceding balance sheet of the Partnership or such later balance sheet prepared as of the controlling date for the transaction involved in accordance with generally accepted accounting principles."

Similarly, the buy-sell agreements executed as to the corporate entities provided that stock buy-outs be predicated upon "book value", and for the purposes of these agreements, book value was defined, as follows:

"The term 'Book Value' of the shares of Stock for all purposes hereof is defined as the par value of the shares of stock involved, increased by the proportionate part of the surplus or undivided profits attributable thereto and by Deferred Income from Installment Sales attributable thereto, and decreased by the portion of any deficit or impairment of capital attributable thereto, as shown on the last preceding balance sheet of the Corporation or such later balance sheet prepared as of the controlling date for the transaction involved in accordance with generally accepted accounting principles."

Subsequent to the death of Filmore M. Sondock, the five plaintiffs (hereinafter the Brook-Mays Group) hired Haskins & Sells, an accounting firm, to aid them in determining the book value of the businesses so that the buy-sell agreements could be effectuated. A dispute then arose between the Brook-Mays Group and decedent's representatives as to the monetary amount due to the estate and heirs of Filmore M. Sondock.

The amount of money due to the estate varies according to the accounting methods used to reflect such items as, e. g., installment sales, credit life insurance, band directors' commissions and the companies' lia-

bility for lifetime payments to be made to former shareholder Joe Sondock and his wife in the event one of them is still living when all payments to them are complete under the terms of their buy-out. Using the accounting methods advocated by defendants (Eleanor Sondock) results in a rise in the net book value of the companies involved, while the accounting methods which plaintiffs wished to use result in a reduction of their book value. Clearly, an increase in book value results in more money available for distribution to the estate, whereas a reduction in book value lowers the sum available for distribution.

In their pleadings and at trial, the Brook-Mays Group took the position that book value was properly determined on the basis of the accounting procedures which the companies had previously utilized for general business purposes. Defendants on the other hand, urged that the agreements themselves dictated that for *buy-sell purposes,* book value was to be determined "in accordance with generally accepted accounting principles", and further contended that the companies' books were not being kept in accordance with generally accepted accounting principles as of the date of Filmore M. Sondock's death. Thus, defendants claimed that book value—for the purposes of the buy-sell agreement—could not properly be determined by using the accounting principles which had been previously used by the Brook-Mays Group.

■ At trial, and in this appeal, plaintiffs/Brook-Mays Group contended that defendants were estopped from questioning the accounting practices used by plaintiffs in determining their book value because of the acquiescence and participation of the decedent in prior buy-outs, etc., based on these same accounting practices.

While plaintiffs' pleadings did raise the issue of estoppel and evidence was introduced as to some of its elements, no special issues in re estoppel were either requested or submitted to the jury. Plaintiffs argue, however, that they adequately preserved error as to estoppel by their motions for directed verdict and judgment non obstante

veredicto. Reduced to its simplest terms, plaintiffs' contention is that they have established an equitable estoppel as a matter of law. We disagree.

In the seminal case, *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 932 (1952), our Supreme Court set out the elements essential to establishing equitable estoppel, as follows:

> "On the question of estoppel we find that 'In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.' Also, 'Before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference. Nothing can be supplied by intendment. No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts. If an act or admission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel.'" (Citations omitted)

And, in *Concord Oil Co. v. Alco Oil and Gas Corp.,* 387 S.W.2d 635, 639 (Tex.1965), our Supreme Court stated:

> "'The burden of proving an estoppel, and the essential elements thereof, is on the party asserting it.
>
> "'Estoppel is ordinarily regarded as [an] affirmative matter; and under the rule that he who has the affirmative of the issue has the burden of proof, a party who claims, asserts, or invokes, or who alleges and relies on, an estoppel has the burden of establishing it, *or all of the facts or elements necessary to constitute it,* or the grounds on which it rests, and

*the failure to prove any one or more of the elements constituting an estoppel has been declared to be fatal.* The opponent of the party relying on an estoppel is not required to show the absence of any of its component elements.'

*"An essential element of estoppel is that the party relying on an estoppel must have acted on it to his prejudice."* (Citations omitted; emphasis supplied)

The thrust of plaintiffs' estoppel theory revolves around an alleged acceptance of benefits by the decedent in the two prior buy-outs. In effect, they argue that, if the prior method of determining book value results in undervaluation of an owner's interest, the decedent benefited thereby in receiving and retaining the interests purchased thereunder to the detriment of the former shareholder partners. Assuming *arguendo* that this is true, the detriment, if any, was suffered by the two *former shareholders* and *not by plaintiffs.* On the contrary, pursued to its logical conclusion, plaintiffs' theory compels the conclusion that they in fact benefited greatly from the use of the disputed accounting procedures in the prior buy-outs.

The record reveals that there was no evidence offered by plaintiffs to show that *they* had been injured by any misrepresentation or act of concealment by the decedent. Having failed to prove that they themselves were in any way prejudiced by decedent's acts or omissions, plaintiffs may not rely on estoppel. Accordingly, all plaintiffs' points of error in re estoppel are overruled.

The Brook-Mays Group also contends that there is no evidence or, in the alternative, insufficient evidence to support the jury's findings. We shall deal with all of these points together.[1]

In considering "no evidence" points of error, we are constrained to review the evidence in the light most favorable to the jury's findings—to consider only the evidence and inferences which support

the findings and to reject the evidence and inferences contrary to the findings. *Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263, 265 (Tex.1974); *Rourke v. Garza,* 530 S.W.2d 794, 799 (Tex.1975). In determining whether or not the jury's findings are so against the great weight and preponderance of the evidence as to be clearly wrong, we must consider all of the evidence including that which is contrary to the findings. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The questions as to which accounting procedures should properly be used in computing book value were hotly contested at trial. Both sides produced qualified experts who testified at great length on each and every accounting area in dispute. As to the majority of these issues, the jury chose to believe the defendants' witnesses.

Applying the proper rules, as stated above, we find that there is evidence to support the jury findings, and that such findings are not clearly wrong or manifestly unjust. These points of error are overruled.

Plaintiffs additionally complain of the trial court's failure to give effect to certain "multiple deaths" provisions contained in the buy-sell agreements. Essentially, these provisions called for a reduction in the amount of the monthly payments together with an increase in the number of monthly installments due under a buy-out should one buy-out occur while payments are still being made under a previous buy-out.

There are no pleadings by plaintiffs which would support any such "deceleration" order by the trial court, and, in fact, plaintiffs raised this issue for the first time in their amended motion for new trial. Under these circumstances, plaintiffs have clearly waived any right they may have had to such relief. *Board of Firemen's Relief & Retire. Fund v. Stevens,* 372 S.W.2d 572

1. All of these points are directed toward those findings of the jury to the effect that various accounting procedures used by plaintiffs were not in accordance with "generally accepted accounting principles."

(Tex.Civ.App.—Houston 1963, no writ); *33 Tex.Jur.2d, Judgments §§ 56, 65 (1962).*

Next, the Brook-Mays Group complains that "the probate court erred in entering judgment providing only generally that appellee Eleanor Sondock do all things and execute and deliver all instruments of conveyance and other documents as may be necessary under the buy-sell agreement without the specificity necessary to any practical enforcement of such provision."

█ The law is well settled that a decree must define in clear, specific and unambiguous terms the duties or obligations imposed upon a party. Many years ago, the rule was announced with reference to certainty in judgments. In *Spiva v. Williams,* 20 Tex. 442 (1857), it was said:

> "The very object of a suit is to adjudicate and declare the respective rights of the parties, in a shape so that the ministerial officers can with certainty carry into execution the judgment of the court, without the ascertainment and determination of additional facts."

See also, *Rausheck v. Empire Life Insurance Co. of Amer.,* 507 S.W.2d 337, 340 (Tex.Civ.App.—Texarkana 1974, writ ref'd n. r. e.):

> "It is elementary that a 'judgment must be sufficiently definite and certain to define and protect the rights of all litigants, or it must provide a definite means of ascertaining such rights.'"

See also, *Gasperson v. Madill National Bank,* 455 S.W.2d 381, 397 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n. r. e.).

█ We are of the opinion that the judgment itself should divest defendants of any title or ownership in the business entities involved upon the execution by plaintiffs of the required promissory note. During oral argument, counsel for appellants and appellee offered to reach an agreement as to the proper language to effect this divestiture,

and we, therefore, remand this case to the trial court for reformation of this portion of the judgment in accordance with the language agreed upon.[2]

█ Plaintiffs also complain of the trial court's action in ordering them to execute and deliver notes to defendants for the amounts in full found to be due under the buy-sell agreements without giving credit or reduction for the funds paid by them into the registry of the court and withdrawn by defendants. It is obvious that plaintiffs are fearful of double recovery by defendants and they rely, among other cases, upon *Thomas v. Housing Authority of City of Dallas,* 153 Tex. 137, 264 S.W.2d 93 (1953), for the proposition that such is prohibited. While we have no fear of a double recovery in the case at bar, we are of the opinion that the notes executed by plaintiffs should properly be drawn to reflect the precise amounts due to defendants on the date of their execution; and, upon remand, these sums should be ascertained so that this procedure may be followed. We would also point out that future payments need require no new execution of notes or revision of the judgment.

█ Defendants contend, inter alia, that the trial court erred in dividing court costs equally between plaintiffs and the defendants. A trial court possesses broad discretion to assess court costs, and same should not be disturbed without a clear showing of abuse of that discretion. *Broadway Plan v. Ravenstein,* 364 S.W.2d 741 (Tex.Civ.App.—Fort Worth 1963, writ ref'd n. r. e.); *Rubin v. Adams,* 368 S.W.2d 42 (Tex.Civ.App.—Amarillo 1963, writ ref'd n. r. e.).

█ While it is true that defendants greatly improved their position as a result of this trial, it is equally true that some of the jury's findings favored the Brook-Mays Group. Since both parties were successful to some extent, we are unable to say that

2. The parties, according to correspondence reaching our clerk since the cause was submitted, have agreed upon the language of divestiture; however, we do not have in our record an accurate statement of the sums paid into the registry of court for credit upon the notes to be executed. Consequently, we are of the opinion that a remand to the trial court is appropriate so that the details may be incorporated into a judgment which fixes the rights of the parties in accordance with our instructions.

the trial court has clearly abused its discretion, and we, therefore, overrule this point of error.

All parties have other points of error which we have considered, and, finding them to be without merit, they are overruled. The judgment of the trial court is remanded with instructions to make more certain the divestiture of defendants' interests in plaintiffs' companies and in order that the precise amounts of the notes to be executed may be ascertained. In all other things, the judgment of the trial court is affirmed. Costs are taxed one-half to plaintiffs and one-half to defendants.

Judgment AFFIRMED in part, and in part REMANDED with instructions.

### Motion for Rehearing

DIES, Chief Justice.

On motion for rehearing, plaintiffs vigorously argue that this court should have modified the judgment of the trial court so as to grant to Brook Mays Piano Company of Houston, a partnership, an effective judgment for the amount due to it * rather than allowing it to be set-off against defendants' notes from the other four business entities involved herein. We agree.

The debt in question is one due solely to Brook Mays Piano Company of Houston, but this company is the only entity which did not owe defendants any money under the buy/sell agreements.

 Under the rules applicable to set-off, same is proper only where the demands are mutual, between the same parties, and in the same capacity or right. *Masterson v. Goodlett,* 46 Tex. 402, 407 (1877); *Greathouse v. Greathouse,* 60 Tex. 597, 598 (1884); *Thompson v. Prince,* 126 S.W.2d 574, 576 (Tex.Civ.App.—Waco 1939, writ ref'd). Since no debt was due from the estate to any entity other than Brook Mays Piano Company of Houston, it was improper under the foregoing authorities for the trial court to set-off the debt owed

by defendants' decedent against the sums owed by the other four entities to defendants. Moreover, as no sums were due defendants from Brook Mays Piano Company of Houston, set-off was likewise unavailable as against this entity.

Accordingly, we have concluded that the cause of action for decedent's debt to Brook Mays Piano Company of Houston should be severed from the main action. It is so severed and, as to it, the judgment of the trial court is reversed and judgment rendered that plaintiff Brook Mays Piano Company of Houston recover of and from the estate of Filmore M. Sondock the sum of $118,789 with interest of nine percent from the date of the trial court's judgment.

All other points urged by plaintiffs on this motion for rehearing are overruled. Our prior judgment is modified to reflect the severance, reversal and rendition as to the $118,789 debt due to plaintiff. In all other respects our prior judgment is affirmed.

---

* Defendant by her brief admitted that the parties stipulated at the outset of the trial of this cause that decedent's estate was indebted to plaintiff

Brook Mays Piano Company of Houston, a partnership, in the sum of $118,789.