### ORANGE COUNTY, Texas, et al., Appellants,

v.

### Joe WARE, Sr., Appellee.

### No. C–9611.

Supreme Court of Texas.

Nov. 20, 1991.

---

Joe E. Broussard, Elizabeth B. Pratt, Beaumont, John Cash Smith, Orange, for appellants.

Donald B. Kelley, Orange, for appellee.

## OPINION ON MOTION
## FOR REHEARING

HECHT, Justice.

Appellee's motion for rehearing is denied. The prior opinion of the Court is withdrawn, and this is now the opinion of the Court.

Section 154.025 of the Texas Local Government Code states: "A warrant may not be drawn on a salary fund in favor of a person, or an agent or assignee of a person, who is indebted to the state, the county, or the salary fund." The issue we address in this direct appeal is whether section 154.025 violates article XVI, section 28 of the Texas Constitution, which provides: "No current wages for personal service shall ever be subject to garnishment, except for the enforcement of court-ordered child support payments." We hold that the statute is not unconstitutional.

The material facts have been stipulated and may be summarized as follows. Joe Ware, Sr., suffered numerous bail bond forfeiture judgments against him before he was elected County Commissioner of Orange County, Texas. After his election, Orange County demanded payment of the judgments, which it claimed numbered 110 and totaled $26,548. Ware acknowledged that he was indebted to the County but did not agree that the amount claimed was accurate. The County notified Ware that, based upon TEX.LOCAL GOV'T CODE § 154.025, it would withhold payment of his compensation until his debt had been discharged.

Ware initiated this proceeding in the district court to enjoin the County from withholding his compensation, asserting that the County's action was a garnishment of his current wages in violation of article XVI, section 28 of the Texas Constitution. The district court concluded that the County's actions in compliance with section 154.025 were in "direct conflict" with the Constitution, and issued a temporary injunction against the County. We noted probable jurisdiction of the County's direct appeal. *See* TEX. CONST. art. V, § 3-b; TEX.GOV'T CODE § 22.001(c); TEX.R.APP.P. 140.

■ We have held that "[g]arnishment is a statutory proceeding whereby the property, money, or credits of one person in the possession of, or owing by another are applied to the payment of the debt of a debtor by means of proper statutory process issued against the debtor and the garnishee." *Beggs v. Fite*, 130 Tex. 46, 106 S.W.2d 1039, 1042 (1937). Thus defined, garnishment necessarily involves three parties: a creditor, a debtor, and a third person who has some obligation to the debtor. Garnishment is a creditor's action against his debtor's debtor to obtain payment of what is owed the creditor. *See Trahan v. Trahan*, 682 S.W.2d 332, 337 (Tex.App.—Austin 1984, writ ref'd n.r.e.), *appeal dism'd*, 475 U.S. 1002, 106 S.Ct. 1171, 89 L.Ed.2d 291 (1986).

Two courts of appeals have suggested that this tripartite relationship described in *Beggs* is not necessary for garnishment, and that a creditor's offsetting his own obligation to the debtor against the debtor's obligation to him may also be a garnishment. In *Benton v. Wilmer–Hutchins Indep. School Dist.*, 662 S.W.2d 696 (Tex. App.—Dallas 1983, writ dism'd w.o.j.), a school district attempted to recover funds it had paid teachers by mistake by deducting the overpayments from their current salaries. The appeals court held "that in the absence of ... an agreement or consent, a debtor, such as the district, has no right to withhold payment of an amount otherwise lawfully due on a contract by offsetting an unrelated claim against his creditor and thus put the creditor to the burden of filing a suit and proving the invalidity of the unrelated claim." *Id.* at 698. The court then added, in dicta, that the district's action, although not technically a garnishment, violated the policy underlying article XVI, section 28 of the Constitution. The court did not cite *Beggs*. Relying upon *Benton*, the court of appeals in *City of Houston v. Nelius*, 693 S.W.2d 567

(Tex.App.—Houston [14th Dist.] 1985, writ dism'd w.o.j.), held that a city could not withhold salary due an employee who was indebted to the city, despite an ordinance requiring it to do so. Like *Benton*, *Nelius* did not cite *Beggs*.

■ As *Benton* acknowledges, offsetting mutual obligations between two parties is not garnishment. That fact alone renders article XVI, section 28 inapplicable. The language of article XVI, section 28 of the Constitution quite specifically restricts the use of garnishments and not things like garnishments or all debt collection efforts generally. The distinctions are important. For example, it is one thing for an employer to loan an employee money with the employee's agreement and consent that repayments will be deducted from future wages; it is quite another for a third party to seize wages owed an employee to satisfy some other obligation. To outlaw the former transaction would discourage employers from assisting employees by extending them credit, to the detriment of both willing parties. To restrict a third party's seizure of current wages, however, prevents the employee from having to work for an employer who must pay the wages earned to another, an arrangement that is not likely to benefit either the employer or the employee. We need not decide whether it would be good policy to treat these two situations the same or differently; we point out only that the Constitution expressly addresses one and not the other. The law may restrict the right of offset, as *Benton* notes, but the Constitution does not. To the extent *Benton* and *Nelius* suggest the contrary, they are disapproved.

The bond forfeiture judgments against Ware are not in the record before the Court. By statute, however, we know that all such judgments must be taken in the name of the State. TEX.CODE CRIM.PROC. art. 22.02.[1] This does not mean that the

1. "Bail bonds and personal bonds are forfeited in the following manner: The name of the defendant shall be called distinctly at the courthouse door, and if the defendant does not appear within a reasonable time after such call is made, judgment shall be entered that the State

of Texas recover of the defendant the amount of money in which he is bound, and of his sureties, if any, the amount of money in which they are respectively bound, which judgment shall state that the same will be made final, unless good

debt is owed to the State. The money owed is collected by county officers, Tex. Code Crim.Proc. art. 103.003,[2] and deposited in the county treasury, Tex.Code Crim. Proc. art. 103.004(a).[3] The State is involved in the bond forfeitures here in name only. Orange County claims that it is entitled to all amounts adjudged against Ware, and Ware has repeatedly acknowledged in these proceedings that he is indebted to Orange County for at least some of them.[4] As an elected commissioner of Orange County, Ware's compensation is paid by the County. Tex.Loc.Gov't Code § 152.001.

■ Thus, Orange County's threatened withholding of Ware's salary involves only those two parties and not a third party necessary for a garnishment. Even if Ware were correct, and his bond forfeitures were owed to the State rather than the County, his argument must be that the County's withholding of funds because of a debt Ware owes the State is a garnishment. Not only would such arrangement not be a garnishment, it would also not make sense: Ware would not receive his salary, the State would not receive payment of the bond forfeiture judgments, and the County would receive a windfall. In any event, section 154.025, and the County's compliance with it, do not violate article XVI, section 28 of the Constitution.

We therefore conclude that there is no legal basis for the district court's issuance of a temporary injunction against Orange County. Accordingly, the order of the district court is reversed, and the case is remanded to that court for further proceedings.

MAUZY, Justice, dissenting.

There once was a time when this state's constitution protected debtors from garnishment of wages. The command of article 16, section 28 was clear—"No current wages for personal service shall ever be subject to garnishment"—and its effect was plain and simple: a creditor could not clear its accounts by taking the bread off a worker's table.

That day is gone. With today's opinion, the court has effectively abolished one of the most distinctive and important protections of our state constitution. From now on, to collect on a bad debt, all a creditor need do is assign the debt to the debtor's employer. In exchange, the employer can provide valuable goods or services to the creditor, or even pay for the assignment outright at a discount. With the original creditor out of the picture, the employer can now withhold the debtor's wages in satisfaction of the debt.

From the employee's perspective, of course, it makes no difference whether gar-

---

cause be shown why the defendant did not appear."

2. "District and county attorneys, clerks of the district and county courts, sheriffs, constables, and justices of the peace may collect money payable under this title."

3. "An officer who collects recognizances, bail bonds, fines, forfeitures, judgments, jury fees, and other obligations recovered in the name of the state under any provision of this title shall immediately pay the money to the county treasurer of the county for which the money was collected."

4. Ware agreed to the following written stipulation filed in the trial court:
    Mr. Ware acknowledged that some amount of money was owed *to the County* but did not agree that the amount was accurate.
(Emphasis added.) *At the hearing on Ware's application for temporary injunction, the following colloquy occurred:*

The Court: As I understand it, then, by stipulation, the parties agree that Mr. Ware is indebted *to Orange County?*
[Ware's Attorney]: Yes, sir.
(Emphasis added.) In its brief in this Court, Orange County states that "Joe Ware, Sr. is undisputedly indebted *to Orange County...."* (Emphasis added.) In reply, Ware in his brief expresses agreement with this statement and adds that his "bond forfeitures resulted in [my] becoming a judgment debtor *to Orange County."* (Emphasis added.) At oral argument Ware's counsel acknowledged that some or all of the money owed by Ware belongs to Orange County. In a post-argument brief, Orange County asserts that "the monies owed under a bond forfeiture judgment are owed 100 percent to the county, not to the state." Ware responded to this brief but did not challenge Orange County's assertion.

nishment is accomplished directly or indirectly. To this court, though, it makes all the difference in the world. Since there are now only two parties involved—the debtor and the employer—the court concludes that the constitutional protection does not apply.

I agree that garnishment is a proceeding whereby one person's property, money, or credits in the possession of another are applied to the payment of a debt. I disagree, however, with the court's conclusion that mutual obligations can never fit that description. If a creditor assigns an obligation to the debtor's employer, the employer's withholding of wages is just as much a garnishment as if the original creditor had sought garnishment directly.

Here, there is no dispute that the judgments against Commissioner Ware are in the name of the state. The court considers that fact unimportant; because the county collects the funds, the court determines that the state is involved "in name only." 819 S.W.2d at 475. The terms of the state's involvement, though, are set by the state itself. Disposition of the judgment proceeds is governed by state statute, not by the constitution or county ordinances. Thus, the state could have chosen to channel the judgment proceeds directly into the state treasury.[1]

If that procedure were in place—that is, if the proceeds from the judgments went straight to the state, rather than the county—then the state clearly could not collect the judgments by garnishment of Commissioner Ware's wages. Ware was elected to serve Orange County, not the State of Texas; and as "a corporate and political body," Tex.Loc.Gov't Code § 71.001, Orange County is "a public entity with separate status." 35 D. Brooks, COUNTY AND SPECIAL DISTRICT LAW § 1.4 (Texas Practice 1989); see also Crane v. State of Texas, 759 F.2d 412, 419–

20 (5th Cir.1985). Since three parties would be involved, the state's attempt to garnish Ware's wages would fall squarely within the prohibition of article 16, section 28, even as interpreted by the court today.

How, in those circumstances, might the state collect on those judgments? Perhaps, to circumvent the prohibition of garnishment, it could assign the judgments to the county, and authorize the county to withhold Ware's salary pending satisfaction of the debt. That would be a no-lose proposition for the county: if the county collected on the judgments, it could keep the proceeds; if not, it could keep Ware's salary. In return, the county could provide funds to the state; or, to the same effect, it could provide services which the state might otherwise have to finance with general revenue.

That is exactly what has happened here. By statute, the state has assigned the proceeds of the judgments to the county, Tex. Code Crim.Proc. art. 103.004(a), and has authorized the county to withhold salaries due to debtors, Tex.Loc.Gov't Code § 154.-025. In return, the county shoulders expenses which the state would otherwise have to bear. See Op.Tex.Att'y Gen. No. O–4394 (1943).[2] The state is thus enriched just as surely as if it had garnished debtors' wages directly.

Prior to today's harsh action, the courts of this state had consistently held that the constitutional prohibition of wage garnishment cannot lawfully be circumvented. In *Dempsey v. McKennell*, 2 Tex.Civ.App. 284, 23 S.W. 525 (1893, no writ), the court expressly held that current wages could not be offset by a debt which a third party had assigned to the employer. Any other result, the court noted, would allow a creditor to circumvent the constitution:

> Had [the creditor] garnished [the employer], she could not have reached, by that

---

1. Some funds collected from criminal defendants are, in fact, channeled to the state treasury. *See, e.g.,* Tex.Code Crim.Proc. art. 102.054 (Criminal Justice Planning Fund); Tex.Rev.Civ. Stat.Ann. art. 8309–1, § 14(e) (Compensation to Victims of Crime Fund).

2. *"In order to compensate the county in which a criminal prosecution is had,* provision is made by the code (Article 949 [now 103.004], Code of Criminal Procedure) for the payment to that county of the amount collected from forfeited bail bonds; the sums are not required to be paid into the State Treasury for the benefit of the State at large." (Emphasis added.)

process, the debt which he owed [the employee]; and, in our opinion, she cannot accomplish the same result indirectly by assigning the claim and having it pleaded as a set-off.

23 S.W. at 526. More recently, in *City of Houston v. Nelius*, 693 S.W.2d 567 (Tex. App.—Houston [14th Dist.] 1985, writ dism'd w.o.j.), a city's withholding of an employee's paycheck in reliance on its charter and code provisions prohibiting issuance of warrants to those indebted to it was determined to be unconstitutional self-help that improperly circumvented the ban on wage garnishment. Likewise, in *Benton v. Wilmer–Hutchins Independent School Dist.*, 662 S.W.2d 696 (Tex.App.—Dallas 1983, writ dism'd w.o.j.), the school district attempted deductions from current wages to cover claimed overpayments to teachers for sick leave claims under a prior year's contract. The court of appeals held that such a device, though not technically a statutory garnishment, would contravene the constitutional prohibition against garnishment of current wages.

Whatever the form and even if given a different name, a legislative enactment to destroy or impair the constitutional protection against wage garnishment is unconstitutional and void. *Sloan v. Douglass*, 713 S.W.2d 436, 442 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.); Op.Tex.Att'y Gen. No. O-5148 (1943) (statute attempting to subject a specified portion of wages for personal services to being reached by law "save and except garnishment" is unconstitutional and void). With the sole exception of court-ordered child support enforcement, a procedure may not appropriate a laborer's wages before the laborer receives them. Tex. Const. art. 16, § 28. To hold otherwise, as the court does today, is to nullify the constitutional guarantee.

Only by rejecting a century of jurisprudence regarding this constitutional protection does the court reach today's tortured result. It disapproves the reasoning of every court that has actually considered the issue presented here, disavowing two court of appeals opinions expressly and at least two others implicitly. To justify this broad repudiation of established precedent, the court pulls out of context a single sentence of dicta in *Beggs v. Fite*, 130 Tex. 46, 52, 106 S.W.2d 1039, 1042 (1937), quoting a definition of "garnishment" from the first edition of Texas Jurisprudence. That case involved no consideration of whether the facts presented fit this definition; in fact, the very first sentence of the *Beggs* opinion states, "This is a garnishment proceeding." 106 S.W.2d at 1039. Nonetheless, the court today holds up *Beggs* as definitive authority on the scope of the constitutional restriction of garnishment. Worse, the court misrepresents the substance of the *Beggs* opinion: nothing in it says that "garnishment necessarily involves three parties," as the court today declares; rather, the opinion describes the roles involved in garnishment, without addressing whether one party can fill two of those roles.

The constitutional prohibition of garnishment has been a unique part of our Texas heritage since 1876. No other state in the nation has an absolute constitutional or even statutory ban on garnishment. *See* G. Braden, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 760 (1977). The purpose of this provision was "protecting to the employee his current earnings to meet and defray the current expenses of his living, that he may enjoy a credit to the extent of his current earnings, and not be forced into a condition of abject dependence and want." *Bell v. Indian Live–Stock Co.*, 11 S.W. 344, 346 (Tex.1889). "The authors of the present constitution felt strongly that it was better that some creditor go unpaid than to take away from the debtor and his family the current wages essential to preserve the family from want and make them independent." Tex. Const. art. XVI, § 28, interp. commentary (Vernon 1955).

Professor Braden comments that the 1876 provision was "ahead of its time," and notes an important argument against wage garnishment: it causes bankruptcy, since that is the only means by which the debtor can terminate the garnishment. *Id.* (citing Brunn, "Wage Garnishment in California," 53 Cal.L.Rev. 1214, 1234–38 (1965)). In-

deed, bankruptcy was the precise result in this case after Commissioner Ware received this court's original decision, delivered December 31, 1990. Additionally, garnishment "encourages overextension of credit by marginal high-risk lenders, creates an undesirable adversary relationship between employer and employee, is unnecessary because creditors can use other devices to secure payment, and is used mostly against the poor and ignorant." *Id.* (citing Sweeney, "Abolition of Wage Garnishment," 38 Fordham L. Review 197, 201 (1969)).

Before today, the only modification of this important constitutional provision since its adoption more than a century ago was that approved by the voters in 1983 to allow the enforcement of court-ordered child support payments. Instead of permitting the voters to determine the scope of the garnishment ban, today, by judicial fiat, six members of this court effectively declare its repeal, in at least substantial part.

By eviscerating this well-established constitutional provision, today's decision will force debtors into exactly that "condition of abject dependence and want" that the framers of our constitution sought to prevent. *Bell v. Indian Live-Stock Co.*, 11 S.W. at 346. I vigorously dissent from this judicial rewrite of the Texas Constitution.

DOGGETT and GAMMAGE, JJ., join in this dissent.

