**FEDERAL DEPOSIT INSURANCE COR-PORATION, Receiver for Western Bank–Westheimer, Appellant,**

v.

**PROJECTS AMERICAN CORPORA-TION, Charles M. Rawson and Jim Rawson, Individually and as Trustees for Projects American Corporation Employee Pension Plan, Appellees.**

No. 6–91–098–CV.

Court of Appeals of Texas, Texarkana.

March 24, 1992.

Rehearing Denied April 28, 1992.

Douglas W. Alexander, Brown, Maroney & Oaks Hartline, Austin, Charles L. Cope, II, Marta W. Berkley, Federal Deposit Insurance Corp., Washington, D.C., for appellant.

Jon M. Stautberg, Houston, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

The Federal Deposit Insurance Corporation (FDIC) appeals from a declaratory judgment granting Projects American Corporation (PAC), and others, an offset of a note against an uninsured deposit. We reverse and render judgment.

In November 1983, Western Bank–Westheimer lent PAC the funds to set up a qualifying defined benefit pension plan for PAC's officers and employees. The note was secured by certain corporate assets of PAC and was personally guaranteed by Charles and Jim Rawson. The Rawsons were the owners and officers of PAC and were also co-trustees and beneficiaries of the pension plan. Charles Rawson is the only fully-vested beneficiary of the plan.

Western Bank failed and was taken over by the FDIC. At that time, a balance of $191,764.27 was due on the note, and the pension plan account on deposit in the bank contained an uninsured balance of over $400,000.[1] PAC continued to make payments on the note, under protest, and filed a suit for declaratory judgment asserting the right to offset the note against the uninsured account. On the basis of testimony, documentary evidence, and trial briefs, the trial court concluded that offset was proper and rendered judgment to that effect. The court ordered a refund of the prejudgment note payments made under protest. FDIC's motion for new trial was overruled. Findings of fact were not requested or filed.

FDIC contends that the trial court erred in allowing the offset because there is no mutuality of demand. It further asserts that even if mutuality exists, federal law and the terms of the pension plan trust prohibit the offset.

Initially, we note that declaratory judgments are reviewed under the same standards as other judgments and decrees. Tex.Civ.Prac. & Rem.Code Ann. § 37.010 (Vernon 1986). The trial court's conclusion, being one of law, will be upheld on appeal if it can be sustained on any legal theory supported by the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984); *Simpson v. Simpson*, 727 S.W.2d 662, 664 (Tex.App.—Dallas 1987, no writ); Hall, *Standards of Appellate Review in Civil Appeals*, 21 St. Mary's L.J. 865, 923–24 (1990). If reversal is warranted, we render the judgment the trial court should have rendered, unless a remand is necessary for further proceedings. *See Lone Star Gas Co. v. Railroad Commission of Texas*, 767 S.W.2d 709, 710 (Tex.1989); *NRG Exploration, Inc. v. Rauch*, 671 S.W.2d 649, 653 (Tex.App.—Austin, 1984, writ ref'd n.r.e.); Tex.R.App.P. 81(c).

■ FDIC first contends that the offset is improper because there is no mutuality of demand between the parties. In order for one demand to be set off against another, there must be mutuality. *Western Shoe Co. v. Amarillo Nat. Bank*, 127 Tex. 369, 94 S.W.2d 125, 128 (1936). Mutuality of demand exists where debts are owing between the same parties in the same right or capacity. *Dallas/Fort Worth Airport*

---

1. The record reflects that Charles Rawson received the insured limit of $100,000.00 out of this account, while other beneficiaries, not parties to this appeal, received lesser sums. At the time of suit, the balance was stipulated to be $322,537.60.

*Bank v. Dallas Bank & Trust Co.,* 667 S.W.2d 572, 575 (Tex.App.—Dallas 1984, no writ); *Brook Mays Organ Co. v. Sondock,* 551 S.W.2d 160, 166 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.). The debts must be such that the party asserting offset could maintain an action on that debt, while the other party could claim his cause of action in that suit as an offset. *See Rose v. Motes,* 220 S.W.2d 734, 735–36 (Tex. Civ.App.—Galveston 1949, no writ); 20 Am. Jur.2d *Counterclaim, Recoupment, and Setoff* § 75 (1965).

■ FDIC argues that mutuality is lacking here because PAC and the Rawsons, as guarantors, owe the note to FDIC, while FDIC owed the uninsured funds to the pension trust. Conceding that this position is technically correct, PAC counters that mutuality nevertheless exists because of the equities and the factual connections between the parties.

Since the trial court did not specify precisely which parties were mutual, we examine the position of each plaintiff to determine if mutuality exists between any of them and the FDIC. The threshold point of this analysis is whether any of the individual plaintiffs could maintain an action against the FDIC for the funds in the pension plan account. *See Rose v. Motes,* 220 S.W.2d at 735–36; 20 Am.Jur.2d *Counterclaim, Recoupment, and Setoff* § 75; *cf. Brook Mays Organ Co. v. Sondock,* 551 S.W.2d at 166. The next inquiry is whether, in that action, the FDIC could assert its rights against that plaintiff by way of offset. *See Rose v. Motes,* 220 S.W.2d at 735–36; 20 Am.Jur.2d *Counterclaim, Recoupment, and Setoff* § 75.

We perceive no basis for mutuality between PAC and the FDIC. PAC, a corporation, is the employer of the pension beneficiaries. It is liable to FDIC on the note, but it does not own the pension fund account. The Employee Retirement Income Security Act (ERISA) does not allow employers to maintain actions concerning pension plan benefits. 29 U.S.C.A. § 1002(7), (8) (West Supp.1991), § 1132(a)(1)(B) (West 1985 & Supp.1991). While PAC has a legitimate interest in the general welfare of its employees, we can ascertain no interest which would allow it to maintain a suit to recover the pension funds.

PAC contends that there is mutuality because there is an identity of debt. It contends that the bank had the right to seize the pension plan funds if PAC defaulted on the note. To support this argument, it points to the fact that the pension plan is referenced in the note, and to testimony that the plan funds were intended to be security for the note. However, the note, by its express terms, is secured only by specific real estate and receivables. The note references the plan only to indicate the purpose of the loan. Furthermore, evidence of a side agreement that the plan funds would be additional security for the loan is barred by federal law. *See D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); 12 U.S.C.A. § 1823(e) (West 1989);[2] *see also, Federal Deposit Ins. Corp. v. F & A Equipment Leasing,* 800 S.W.2d 231, 239–40 (Tex.App.—Dallas 1990, no writ). PAC argues that the evidence does not show another or side agreement, but only explains the *primary* agreement. However, the thrust of Rawson's testimony is that the plan funds were additional security for the loans, although not recorded in the bank's records. This is precisely the situation the *D'Oench* rule and Section 1823(e) address. *FDIC/Manager Fund v. Larsen,* 793 S.W.2d 37, 44 (Tex.App.—Dallas 1990, no writ). We conclude that the evidence does not support a conclusion that there was an identity of debt between PAC and FDIC.

■ The trustees of the pension plan trust contend that the trust has the requisite mutuality with the FDIC to allow the offset. Although it is true that the trustees could maintain an action on behalf of the plan against the depository of its funds (now the FDIC), 29 U.S.C.A. § 1132(a)

---

**2.** This statute provides that no agreement which tends to diminish or defeat the right, title, or interest of the FDIC in any asset acquired by it shall be valid unless certain requirements, such as being in writing, are met. 12 U.S.C.A. § 1823(e) (West 1989).

(West 1985); TEX.PROP.CODE ANN. § 113.019 (Vernon 1984), the FDIC could not assert its rights to the corporate debt against the plan. There is no evidence that the FDIC could look to this fund to satisfy PAC's note in the event of default. As discussed above, *D'Oench* and Section 1823(e) bar evidence that the bank could look to the plan funds if PAC defaulted on the note. Moreover, funds held by a depositor in trust may not be applied to offset individual debts of the depositor. *Steere v. Stockyards Nat. Bank,* 113 Tex. 387, 256 S.W. 586 (1923); *Allied Bank West Loop v. C.B.D. & Associates, Inc.,* 728 S.W.2d 49, 58 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Nor can the funds be applied to personal debts of the trustees. *See, e.g., Reed v. Valley Federal Savings & Loan Co.,* 655 S.W.2d 259, 263 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.). While the trustees could sue on behalf of the plan, the FDIC could not maintain a suit against the plan or the Rawsons, as plan trustees, to recover on PAC's note. Thus, there is no mutuality between the FDIC and the plan or its trustees.

The trustees insist that the FDIC could look to the pension plan as security for the loan, citing *O'Toole v. Arlington Trust Co.,* 681 F.2d 94 (1st Cir.1982). That case is inapposite. The court there held only that federal-question jurisdiction did not exist because ERISA, 29 U.S.C.A. § 1056(d),[3] did not protect the *corpus* of a pension fund, as distinguished from the pensioners' individual benefits, from the depository, and so was not violated by the attempt of the depository there to offset pension funds against corporate debts. As the court stated in that case,

> The prohibition is directed at "benefits provided", not the corpus of the fund; and the potential for assignment or alienation, which is limited by the prohibition, would seem to lie with the beneficiary, not the depository.... We would be hard-pressed to find that § 1056(d) was intended to do more than address the

individual beneficiary's right of access to his share of the fund.

In our view, the ruling in *O'Toole* necessarily cast the substantive issue, i.e., a bank's ability to offset corporate debts against pension fund accounts, as one of state law. In Texas, this issue would be resolved against the bank. *See Allied Bank West Loop v. C.B.D. & Associates, Inc.,* 728 S.W.2d at 58; *Reed v. Valley Federal Savings & Loan Co.,* 655 S.W.2d at 263.

■ We also conclude that, as to the Rawsons individually, mutuality does not exist. While both brothers are liable as guarantors on PAC's note, only Charles Rawson remains a beneficiary of the trust. Having no interest in the trust, Jim Rawson could not maintain an action in its behalf. Charles Rawson, as a beneficiary, could maintain some actions against the FDIC. 29 U.S.C.A. § 1132(a)(1)(B); TEX. PROP.CODE ANN. § 115.011(a) (Vernon 1984). However, ERISA prohibits the particular remedy he seeks here. 29 U.S.C.A. § 1056(d)(1). Charles Rawson is clearly seeking to have his future benefits applied to a personal liability. ERISA forbids the voluntary assignment or alienation of retirement benefits to satisfy a participant's liabilities. The provision is directed at beneficiaries, *O'Toole v. Arlington Trust Co.,* 681 F.2d at 96, and is meant to keep a stream of income free from the reach of creditors and insure that retirement benefits are available for beneficiaries and their dependents. *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782, 795 (1990). Preventing offset here will comply with both the letter and spirit of the law. Because Charles Rawson could not maintain his cause of action against the FDIC, we hold that mutuality does not exist between him and the FDIC.

Charles Rawson contends that refusing an offset would work a manifest injustice by requiring him to repay the note while receiving only the insured portion of his vested benefits; whereas the FDIC would collect in full on the note "and enjoy the windfall of retaining" the uninsured bal-

---

**3.** Amended 1989, current version found at 29 U.S.C.A. § 1056(d) (West Supp.1991).

 

ance of the account. We disagree with this contention. First, the parties stipulated that the loan was paid, but there is no evidence as to whether PAC, Charles Rawson, or Jim Rawson satisfied the note. Nor is there any evidence that the FDIC has, in PAC's words, "seized" the funds. There is no evidence that the plan will never collect on the account. We fail to see how FDIC will enjoy a windfall if the uninsured funds are not offset. If the money is not there for the plan, it is not there for the FDIC either.

We also conclude that the pension plan trust agreement prohibits Charles Rawson from using any portion of his retirement benefits to pay his debt to the FDIC. Section 13.07 of the trust agreement provides that:

> Alienation or Assignment. To the extent permitted by law, no payment to any persons, nor *the right to receive such payments, nor any interest in the Trust, shall be subject to assignment,* alienation, transfer or anticipation, *either by voluntary or involuntary act of any Participant or Beneficiary or by operation of law, nor shall such payment or right or interest be subject to the demands or claims of any creditor* of such person, *nor be liable in any way for such person's debts, obligations or liabilities.*

(Emphasis added.) To apply the offset would be to subject Charles Rawson's interest in the plan benefits to his debts, in plain contravention of the trust agreement's terms.

The Supreme Court has admonished the courts of this nation to refrain from creating equitable exceptions to the congressional policy enunciated in ERISA. *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. at 376–77, 110 S.Ct. at 687–88, 107 L.Ed.2d at 795. Today, we heed that admonition and hold that an offset is inappropriate. We therefore reverse the judgment below and render judgment that the plaintiffs are not entitled to offset the uninsured pension plan deposits against the

Western Bank–Westheimer–PAC note balance.

It is so ordered.