TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00298-CV







Turner Brothers Trucking Company, Inc., Appellant



v.



Commissioner of Insurance of the State of Texas and Texas


Workers' Compensation Insurance Facility, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 94-02561, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING







 Appellant Turner Brothers Trucking Company, Inc. ("Turner Brothers") appeals
from a district court judgment affirming an order of the Commissioner of Insurance. In four
points of error, Turner Brothers complains of a retroactive premium increase in its workers'
compensation insurance policy by the Texas Workers' Compensation Facility ("the Facility"), and
attacks the Facility's authority to offset the resulting balance against a refund owed to Turner
Brothers on subsequent coverage provided by the Facility. Because we find no error in the
Commissioner's order, we will affirm the judgment of the district court.



Background


 Turner Brothers is a trucking and storage company with operations in Texas,
Colorado, and Oklahoma. In January 1991, Turner Brothers submitted an application to the
Facility for a workers' compensation insurance policy through the Employer's Rejected Risk
Fund. For those employers unable to obtain coverage in the voluntary market, the Facility at that
time provided workers' compensation coverage through the Employer's Rejected Risk Fund. See
Tex. Ins. Code Ann. art. 5.76-2, §§ 2.02(2), 4.01 (West Supp. 1996). (1) The Facility bound
coverage for Turner Brothers and contracted with Cigna Insurance Company ("Cigna") to service
the policy. See Tex. Ins. Code Ann. art. 5.76-2, § 4.08 (West Supp. 1996) (providing that
Facility may contract with member companies to service its policies). Coverage was effective
under the policy from February 1, 1991 to February 1, 1992. 

 Turner Brothers' policy premium, as with all workers' compensation policy
premiums, was based in part on Turner Brothers' experience rating modification factor (the
"experience modifier"). The experience modifier represents a company's expected loss rates
while the policy is in force, and is based on the company's actual loss experience for a time period
preceding the effective date of the policy. The rating and application of the experience modifier
is governed by the Texas Experience Rating Plan Manual ("the Manual"). Although the rules in
this Manual are not published in the Texas Register, they are part of the body of rules
promulgated by the Department of Insurance. (2) See Tex. Ins. Code Ann. art. 5.96(a) (West Supp.
1996); see also Texas Workers' Comp. Ins. v. Personnel Servs., 895 S.W.2d 889, 891 n.2 (Tex.
App.--Austin 1995, no writ).

 The Department of Insurance establishes standard or "manual" experience rates;
the manual rate in place during the period relevant to this appeal was 1.0. The manual rate can
be adjusted downward for employers with a good record on loss experience, resulting in a lower
policy premium. For those employers with a poor record on loss experience, the experience
modifier can be adjusted upward, resulting in a higher premium. 

 For interstate companies like Turner Brothers, whose experience data in other states
is not readily available to the Department of Insurance, the experience modifier is determined by
the National Council of Compensation Insurers ("NCCI"). The experience modifier is calculated
annually and goes into effect on the employer's "anniversary rating date"; the anniversary rating
date for Turner Brothers was October 1st. NCCI provided a .61 modifier, effective October 1,
1990, which Turner Brothers used in applying to the Facility for its February 1, 1991 coverage. 
But NCCI noted that the .61 modifier was contingent, because NCCI did not have all the data
necessary to issue an experience modifier in accordance with the Manual. NCCI was missing data
on Turner Brothers' operations in Colorado and Oklahoma. Thus when Turner Brothers applied
for coverage with the Facility, it submitted the contingent .61 experience modifier and labeled it
as "tentative." 

 When the Facility bound coverage for Turner Brothers, it issued a binder stating
that the .61 experience modifier would apply "subject to any revisions." The policy itself,
serviced by Cigna, included an estimated premium based on the tentative .61 modifier. The
policy stated that this premium was an estimate and that the final premium would be determined
at the end of the policy term using the actual, not estimated, premium basis and the proper
classifications and rates. 

 In April 1992, two months after the expiration of the policy at issue, NCCI issued
a revised experience modifier rating for Turner Brothers of 1.19 for the period October 1, 1990
to October 1, 1991. That same month, NCCI issued a revised contingent experience modifier
rating of 1.12 for the period October 1, 1991 to October 1, 1992. Cigna sought to apply the 1.19
rating to the policy from its inception of February 1, 1991 to October 1, 1991; it sought to apply
the 1.12 rating to the policy from October 1, 1991 to February 1, 1992. The retroactive
application of these revised experience modifiers resulted in a premium increase to Turner
Brothers of approximately $660,600. 

 Turner Brothers strongly objected to the retroactive premium increase, claiming
that it would not have subscribed to a policy subject to such high experience modifiers. In
recognition of the late promulgation of the experience modifier by NCCI, the Facility offered to
apply the original .61 modifier to the policy through October 1, 1991, and to apply the 1.12
modifier to the policy from October 1, 1991 through the end of the policy. This application
would result in an approximate premium increase to Turner Brothers of $178,600. Turner
Brothers rejected this offer, and appealed the premium increase to the Facility's Governing
Committee. The Governing Committee approved a compromise arrangement applying the .61
modifier to the policy through October 1, 1991, and applying the manual rate of 1.0 from October
1, 1991 through the end of the policy. This arrangement resulted in a total premium increase to
Turner Brothers of approximately $82,500. 

 Turner Brothers steadfastly refused to pay any additional premium on the policy. 
Meanwhile, in November 1992, the Facility cancelled coverage on a current policy serviced by
Wausau Insurance Companies that it had provided for certain divisions of Turner Brothers. 
Accordingly, the Facility calculated a credit on this policy in favor of Turner Brothers of
approximately $105,200. Because the Facility requires payment of all outstanding balances to
maintain current coverage, the Facility applied the $82,500 outstanding balance against this credit. 
Turner Brothers appealed the Facility's actions to the Texas Department of Insurance, claiming
that the retroactive application of a revised experience modifier was impermissible, and that in any
case the Facility lacked the authority to offset any outstanding balance against the credit owed
them. See Tex. Ins. Code Ann. art. 5.76-2, § 2.08(a) (West Supp. 1996). The Commissioner
of Insurance issued an order upholding the actions of the Facility. Turner Brothers sought judicial
review in district court, which upheld the Commissioner's order, and this appeal ensued. See
Tex. Gov't Code Ann. § 2001.171 (West 1995).



Discussion and Holdings


 In its first two points of error, Turner Brothers attacks the Commissioner's order
on the grounds that the retroactive increase of the experience modifier runs contrary to the
applicable provisions of the Manual. Turner Brothers asserts that Rule IV(3)(b) of the Manual
controls in this situation, and that it allows only for a prospective change in the experience
modifier.


 The rule states in pertinent part:



With respect to a policy which becomes effective on a date more than three months
after the [anniversary] rating date the experience modification determined for such
[anniversary] rating date shall apply until a date twelve months therefrom, at which
time a new experience modification shall be determined to apply for the unexpired
term of the policy . . . .



Texas Experience Rating Plan Manual, Rule IV (3)(b) (effective December 1, 1989). The
anniversary rating date for Turner Brothers was October 1, 1990; the policy became effective
February 1, 1991, more than three months after the anniversary rating date. Rule IV(3)(b)
therefore applies to the policy. Turner Brothers contends that the language in this rule provides
that any experience modifier calculated after the first anniversary rating date cannot be applied
until the following anniversary rating date, and that it can then be applied prospectively only. 
Thus in the present case, Turner Brothers claims that the .61 modifier in place as of October 1,
1990 would be in force until October 1, 1991; because no new modifier had been calculated as
of that date, the .61 modifier should remain in force until October 1, 1992. According to Turner
Brothers' interpretation of Rule IV(3)(b), the .61 modifier would apply throughout the entire
policy period. 

 Turner Brothers asserts that because the Facility did not comply with this rule
governing the changing of the experience modifier, the Commissioner's order upholding the
Facility's actions was arbitrary and capricious. See Public Util. Comm'n v. Gulf States Utils. Co.,
809 S.W.2d 201, 207 (Tex. 1990) (agency's failure to follow clear, unambiguous language of its
own regulation renders its action arbitrary and capricious). In upholding the Facility's actions,
the Commissioner interpreted Rule IV(3)(b) to allow for the retroactive increase of the experience
modifier. This agency interpretation of its own regulation is entitled to deference by the courts. 
Id. at 207; Texas Water Comm'n v. Lakeshore Util. Co., 877 S.W.2d 814, 824 (Tex. App.--Austin
1994, writ denied). We determine only whether the interpretation "is plainly erroneous or
inconsistent with the regulation." Gulf States Utils. Co., 809 S.W.2d at 207 (citations omitted). 
 

 The Commissioner determined that while Rule IV(3)(b) governs the time frame
during which a given experience modifier applies to a policy, it imposes no deadline on when the
experience modifier must be promulgated. The importance of the rule concerns when, with
respect to the effective dates of the policy, a new experience modifier can be applied to that policy. 
According to the Commissioner's interpretation, the rule is satisfied when the modifier is applied
to the policy from its anniversary rating date through the following twelve months, regardless of
when the experience modifier is promulgated. The issue of when the experience modifier must
be calculated is beyond the scope of the rule. 

 We agree with the Commissioner's interpretation of this rule. Requiring the
Facility to determine and apply an experience modifier as of a particular anniversary rating date
would lead to undesirable results. According to NCCI, an experience modifier based on
incomplete data -- such as the .61 contingent modifier in this case -- is not in accordance with the
Manual. Turner Brothers' interpretation of Rule IV(3)(b), which would require the application
of such a modifier, would therefore conflict with other provisions of the Manual. Furthermore,
if the Facility were required to apply a contingent modifier based on incomplete data, the risk that
the contingent modifier would not reflect an employer's true loss experience might encourage the
Facility to inflate the modifier as a precautionary measure when issuing binders. In any case,
such a modifier would not reflect actual loss experience, and would result in an inaccurately
calculated premium. The Commissioner's interpretation assures accuracy by allowing only for
the application of a correct experience modifier, once it has been received from NCCI.

 This interpretation comports with the Commissioner's finding of fact that the
Facility, which is subject to Rule IV(3)(b), has no control over when NCCI promulgates the
experience modifiers. The Facility is required to use the experience modifier provided by NCCI
for companies with interstate operations. NCCI in this case could not calculate an accurate
modifier until it had the necessary loss experience data from Turner Brothers' operations in
Colorado and Oklahoma. The Facility exercised no authority over when and how this information
would be passed from Turner Brothers to NCCI, and so did not contribute at all to the delay in
NCCI's promulgation of the actual modifier. 

 Turner Brothers also asserts that the terms of the policy itself do not allow for the
retroactive increase of the experience modifier. Turner Brothers claims that the "Anniversary
Rating Date Endorsement" contained in the policy allows only for the prospective change of the
modifier. The endorsement states that "the premium and rates for this policy, and the experience
modification factor, if any, may change on your anniversary rating date . . . ." The schedule on
the endorsement reflects an anniversary rating date of October 1, with no year specified. Turner
Brothers interprets this endorsement as requiring that any change in the experience modifier must
take place on an anniversary rating date subsequent to the date of the endorsement. However, the
endorsement simply specifies the date on which a new modifier promulgated during the policy
period would become effective; it does not state that a changed experience modifier can be applied
prospectively only. This is consistent with the endorsement's failure to specify a particular year
in listing the anniversary rating date. The correctly calculated modifiers, promulgated by NCCI
in 1992, conformed with the endorsement -- the 1.19 modifier was applied from the beginning of
the policy through October 1, 1991; the 1.12 modifier was applied from October 1, 1991 through
the end of the policy. 

 We believe that the notice of change in the endorsement reflects that a change in
the modifier was contemplated. We also note that the policy lists an estimated policy premium,
which suggests that some change in the assumptions underlying the computation of the premium
-- such as the experience modifier -- was anticipated. The binder issued by the Facility reflected
that the .61 modifier was tentative and subject to revision. 

 We hold that the retroactive change in the experience modifier, and the resulting
retroactive increase in the policy premium, was consistent with the applicable rules and terms of
the policy. Turner Brothers complains of the unfairness in being confronted with a substantial
premium increase so long after having purchased the policy based on a lower estimated premium. 
However, Turner Brothers was made aware of this possibility when it contracted for coverage,
and the Facility compensated for the delay in NCCI's promulgation of the modifier by reducing
the premium approximately $580,000. We overrule Turner Brothers' first and second points of
error.

 Turner Brothers complains that the Facility lacked the authority to offset its debt
from the 1991-92 policy against its credit from the 1992-93 policy. In its fourth point of error,
Turner Brothers asserts that the trial court erred in dismissing this claim. The Commissioner
sought dismissal on the ground that Turner Brothers first raised this claim in its Second Amended
Petition, (3) which it filed well beyond the thirty-day period for seeking judicial review of agency
decisions. See Tex. Gov't Code Ann. § 2001.176 (West 1995). 

 This Court has held that a plaintiff in a suit for judicial review of an agency's final
order may amend its original petition to plead causes of action within the trial court's subject
matter jurisdiction. EnRe Corp. v. Railroad Comm'n, 852 S.W.2d 661, 663 (Tex. App.--Austin
1993, writ denied). Turner Brothers raised this claim in its motion for rehearing before the
Commissioner; accordingly, the trial court had jurisdiction to hear the claim and erred by granting
the Commissioner's motion to dismiss. See Tex. Gov't Code Ann. § 2001.171 (West 1995);
EnRe, 852 S.W.2d at 663 (compliance with APTRA section 16(e), now Government Code section
2001.171, is jurisdictional prerequisite to appeal). Nevertheless, for the reasons that follow, we
do not think the trial court's error "was reasonably calculated to cause and probably did cause
rendition of an improper judgment." See Tex. R. App. P. 81(b).

 Turner Brothers contends in its fifth point of error that the Facility is a creature of
statute and has only those powers outlined by statute, which does not include the remedy of offset. 
The Facility is not purely a creature of statute; it is a governmental body only for the purposes
of the open meetings law and the open records law. Tex. Ins. Code Ann. art. 5.76-2, § 2.11
(West Supp. 1996). The Facility is a nonprofit, unincorporated group of insurers; membership
in the Facility is a prerequisite to writing workers' compensation insurance coverage in Texas. 
Tex. Ins. Code Ann. art. 5.76-2, § 2.01 (West Supp. 1996). While the Facility cannot act in
violation of the Insurance Code, it does not derive its power to act strictly from the Code. See
Tex. Ins. Code Ann. art. 5.76-2, § 2.05(m) (West Supp. 1996) (in addition to statutory rights,
Facility has legal rights of private person). Were the Facility's powers limited to those in the
statute, we question whether it would possess the authority to reduce by roughly $580,000 the
insurance premium owed by Turner Brothers.

 Turner Brothers maintains that, even though the Facility may have the same rights
as a natural person, it could not lawfully offset the premium debt against the credit because the
two sums did not arise from the same transaction. In support of its argument, Turner Brothers
cites Benton v. Wilmer-Hutchins I.S.D., 662 S.W.2d 696 (Tex. App.--Dallas 1983, writ dism'd),
overruled in part on other grounds, Orange County v. Ware, 819 S.W.2d 472, 474 (Tex. 1991). 
In Benton, the court held that the school district had no right to deduct from teachers' salaries
amounts claimed as overpayments to those teachers from previous years. The court reasoned that
the claims could not be offset because the teachers' lawfully due salary was unrelated to the
district's claim of overpayment. Benton, 662 S.W.2d at 698. The court noted that this rule had
particular applicability because of the State's strong policy of protecting wages, as manifested in
the State's constitutional prohibition against the garnishment of wages. Id. at 698; see Tex.
Const. art. XVI, § 28. The supreme court in Orange County held that while the law may restrict
the right to offset, this constitutional provision was irrelevant to the analysis because offsetting
mutual obligations between two parties was not garnishment. Orange County, 819 S.W.2d at 474. 
 

 Although Benton did not describe a standard for determining when claims are
"related" for the purposes of offset, we conclude that Turner Brothers' credit with and debt to the
Facility were sufficiently related to authorize the offset undertaken by the Facility. Both the credit
and the debt arose out of Turner Brothers' contracting with the Facility for workers' compensation
insurance coverage. (4) The Facility offset the sums in order to maintain Turner Brothers' current
coverage, pursuant to the Facility's own rule requiring the payment of any outstanding balance
to maintain current coverage. Thus the Facility used the credit from the current policy to allow
Turner Brothers' current coverage. 

 We also note that the Facility would have been entitled to judicial offset of the
amounts owed under the guidelines set out in F.D.I.C. v. Projects American Corp., 828 S.W.2d
771 (Tex. App.--Texarkana 1992, writ denied). According to that case, claims can be offset when
there is mutuality of demand between them; mutuality of demand exists where debts are owing
between the same parties in the same right or capacity. Id. at 772. The facts of the present case
meet this standard; each party claims a debt owed by the other in their same capacities. We
overrule Turner Brothers' fifth point of error.

 Turner Brothers waived its third point of error at oral argument, and we therefore
do not address it.

 Finding no reversible error, we affirm the judgment of the district court.



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Jones and B. A. Smith

Affirmed

Filed: December 13, 1995

Publish
1.   The Facility stopped writing workers' compensation insurance on December 31, 1993. See
Act of Aug. 25, 1991, 72d Leg., 2d C.S., ch. 12, § 18.24, 1991 Tex. Gen. Laws 362, 362. On
January 1, 1994, the Texas Workers' Compensation Insurance Fund became the insurer of last
resort for workers' compensation insurance in Texas. Tex. Ins. Code Ann. art. 5.76-4 (West
Supp. 1996).
2.   The duties of the former State Board of Insurance are now performed by the Commissioner
of Insurance or the Texas Department of Insurance. See Tex. Ins. Code Ann. arts. 1.01A, .02
(West Supp 1996); see also Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 13.01, 1991 Tex.
Gen. Laws 939, 1133. For the sake of clarity, we will refer to the former Board of Insurance as
the Department of Insurance.
3.   Turner Brothers mislabeled this pleading in the district court as its First Amended Petition.
4.   It is of no consequence to this analysis that Cigna serviced the 1991-1992 policy and Wausau
serviced the 1992-1993 policy. The Facility is the insurer; the servicing company is merely an
agent which issues the policy for the Facility and is liable only as a reinsurer. See Maintenance,
Inc. v. ITT Hartford Group, Inc., 895 S.W.2d 816, 818 (Tex. App.--Texarkana 1995, no writ h.).



W.2d 696 (Tex. App.--Dallas 1983, writ dism'd),
overruled in part on other grounds, Orange County v. Ware, 819 S.W.2d 472, 474 (Tex. 1991). 
In Benton, the court held that the school district had no right to deduct from teachers' salaries
amounts claimed as overpayments to those teachers from previous years. The court reasoned that
the claims could not be offset because the teachers' lawfully due salary was unrelated to the
district's claim of overpayment. Benton, 662 S.W.2d at 698. The court noted that this rule had
particular applicability because of the State's strong policy of protecting wages, as manifested in
the State's constitutional prohibition against the garnishment of wages. Id. at 698; see Tex.
Const. art. XVI, § 28. The supreme court in Orange County held that while the law may restrict
the right to offset, this constitutional provision was irrelevant to the analysis because offsetting
mutual obligations between two parties was not garnishment. Orange County, 819 S.W.2d at 474. 
 

 Although Benton did not describe a standard for determining when claims are
"related" for the purposes of offset, we conclude that Turner Brothers' credit with and debt to the
Facility were sufficiently related to authorize the offset undertaken by the Facility. Both the credit
and the debt arose out of Turner Brothers' contracting with the Facility for workers' compensation
insurance coverage. (4) The Facility offset the sums in order to maintain Turner Brothers' current
coverage, pursuant to the Facility's own rule requiring the payment of any outstanding balance
to maintain current coverage. Thus the Facility used the credit from the current policy to allow
Turner Brothers' current coverage. 

 We also note that the Facility would have been entitled to judicial offset of the
amounts owed under the guidelines set out in F.D.I.C. v. Projects American Corp., 828 S.W.2d
771 (Tex. App.--Texarkana 1992, writ denied). According to that case, claims can be offset when
there is mutuality of demand between them; mutuality of demand exists where debts are owing
between the same parties in the same right or capacity. Id. at 772. The facts of the present case
meet this standard; each party claims a debt owed by the other in their same capacities. We
overrule Turner Brothers' fifth point of error.

 Turner Brothers waived its third point of error at oral argument, and we therefore
do not address it.

 Finding no reversible error, we affirm the judgment of the district court.



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Jones and B. A. Smith

Affirmed

Filed: December 13, 1995

Publish
1.